## Edwards, Appellant, *v.* Heralds of Liberty.

*Principal and agent—Agent — Contract by agent — Notice of agent's lack of authority—Duty to make inquiry—Ratification—Adoption—Consideration.*

1. A contract made by a corporation acting as agent for a fraternal beneficial association imposing a charge of ten per cent in favor of an insurance solicitor upon the dues and other payments of the members of the association residing within a certain territory, as an inducement to such solicitor to invest in the shares of stock of the corporation, is of such an unusual nature, and so much out of the regular course of business as agent, as to put the solicitor on guard and to charge him with notice of the agent's lack of authority to make such a contract, where inquiry of the governing body of the association would have disclosed the true extent of the agent's authority.

2. A contract made by an agent in his own name undertaking to procure certain things from the principal, is incapable of ratification by the principal, as a contract to be ratified must purport to be made on account of the alleged principal; and where the failure to fulfill a contract is not occasioned by any breach of the principal, but by breach on the part of the agent alone, no action will lie against the principal.

3. In such a contract, the plaintiff cannot establish a case against the principal on the theory that the principal adopted the contract, without showing a consideration for such adoption.

Argued Jan. 10, 1919. Appeal, No. 48, Jan. T., 1919, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1916, No. 4632, discharging motion to take off nonsuit in case of Harold R. Edwards v. Heralds of Liberty. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Assumpsit to recover commissions on insurance written by defendant. Before AUDENRIED, P. J.

The court entered a nonsuit.

The court dismissed a motion to take off the nonsuit in the following opinion, by AUDENRIED, P. J.:

The plaintiff's action is based upon a contract whereby, it is alleged, the defendant, which is a fraternal beneficial corporation, became bound to pay him ten per cent on all insurance written or procured by any person for the defendant in certain counties in the State of Oklahoma. It is averred that a written agreement to this effect was executed and delivered by the plaintiff and the International Loan & Trust Company; that that corporation was the agent of the defendant and duly empowered on behalf of the latter to make such a contract; and that the agreement thus made was subsequently recognized and ratified by the defendant. It is alleged the defendant has paid but a small part of the money to which the plaintiff is entitled under its contract with him, and demand is made for an accounting by it of the business in which he is interested and for the payment of the sum which will thereon appear to be due him.

The defense set up is that the International Loan & Trust Company was without authority from the defendant to make on its behalf such a contract as that entered into with the plaintiff and that the contract made was never ratified by the defendant.

It appeared at the trial that on December 14, 1914, a written agreement had been executed and delivered by the plaintiff and the International Loan & Trust Company. By this writing the plaintiff undertook to purchase from that corporation at $100 per share (their par value) thirteen shares of its capital stock. In consideration of this purchase and "as an inducement thereto" the International Loan & Trust Company undertook "to have issued to the said Harold R. Edwards, through the supreme council of the Heralds of Liberty, an over-

writing contract at ten per cent on all the business written for the said Heralds of Liberty in certain counties in the State of Oklahoma, from the date hereof, no matter by whom said business may be written," and that should the Heralds of Liberty ever be debarred from doing business in the State of Oklahoma, it (the International Loan & Trust Company) would have the overwriting contract of ten per cent transferred to some other state or part of state to be mutually agreed upon, which will return an equal amount of business to the Heralds of Liberty. The International Loan & Trust Company further agreed to render a statement of business derived from the territory above-named and furnish same to Mr. Edwards once a month, and to attach a check thereto to cover the ten per cent overwriting on said business. Whenever the plaintiff "desired to pay a visit to his territory, the purpose being to secure business and improve his contract" it was agreed that the International Loan & Trust Company should cause the Heralds of Liberty to advance toward his expenses at least ten dollars per week.

It has appeared that the International Loan & Trust Co. was the duly appointed "general grand deputy" of the Heralds of Liberty, and that it was authorized on behalf of that corporation to arrange its field work, dispose of territory, employ and discharge its deputies, make rules for their management and control, prescribe forms of reports, fix the amount of bonds required, and attend to all matters pertaining to the management of the field work and control of deputies, as well as all persons engaged in organizing and procuring members, subject to the approval of the defendant's supreme council.

It appeared that its supreme council (nominally consisting of nine members) is the governing body of the Heralds of Liberty, and that in most matters the powers of the supreme council are exercised by an executive committee consisting of three of its members.

It was not shown that the supreme council of the Heralds of Liberty or its executive committee was ever

consulted by the International Loan & Trust Company
or its officers, in relation to the contract entered into by
the International Loan & Trust Company with the plaintiff.

It appeared, however, that the statements in relation
to the business of the Heralds of Liberty in Oklahoma
were from time to time sent to the plaintiff from its
office. That office was also the office of the International
Loan & Trust Company. It was under the charge of
Emanuel Barrick. Mr. Barrick since long before the
date of the plaintiff's contract has been supreme recorder
of the Heralds of Liberty. He is one of its supreme
council and a member of the latter's executive committee. He has also long been the treasurer of the International Loan & Trust Company, and it was by him, as
soi disant "fiscal agent" for the International Loan &
Trust Company that the contract of December 14, 1914,
above referred to, was executed on its behalf.

Evidence was offered by the plaintiff indicating that
on several occasions Mr. Barrick spoke and wrote as if
the defendant recognized the plaintiff's right to demand
an accounting from it in regard to the Oklahoma business, and it is certain that on December 14, 1916, writing as supreme recorder of the Heralds of Liberty, he
notified the plaintiff that any agreement, written or oral,
that he had with the corporation relating to an overwriting commission of ten per cent on business written
for it in certain counties in the State of Oklahoma would
be terminated December 31, 1916.

Upon this evidence a judgment of nonsuit was entered.
That the court is now asked to take off. For the following reasons, we are of the opinion that the case was properly disposed of.

It is conceded, of course, that a principal may not hold
his agent out in the character of one having general authority and bind third persons who have relied thereon
in good faith by secret limitations and restrictions upon
the agent's authority which are inconsistent with the

character bestowed.  Although the agent violates his instructions or exceeds the limits set to his authority, he will yet bind his principal to such third persons, if his acts are within the scope of the authority which the principal has caused or permitted him to possess: Mecham on Agency, 710.  While this is true, it is equally well settled law that a principal may confer on his agent as much or as little of his authority as he sees fit, and may impose upon it all such lawful limitations as he thinks desirable.  Such limitations, even in the case of what is known as a general agent, will be as binding and conclusive upon third persons who know of them or who are charged with notice of them as they are upon the agent. If one knows or has good reason to believe that an agent is exceeding his authority, he cannot claim protection under the rule above referred to, should he continue to deal with him.  Another familiar principle of the law of agency which bears on the case before the court is that an agent entrusted with the management of the business of another may not exercise for his own benefit the power vested in him.

In the case at bar, the exercise of the authority of the "general grand deputy" of the Heralds of Liberty was expressly subjected by its by-laws to the approval of its supreme council.  Of this provision of the defendant's by-laws it may well be that the plaintiff had no actual knowledge.  The power that the International Loan & Trust Company sought to exercise in its dealings with him, was, however, of a most unusual and suspicious character.  The offer by the corporation acting as agent of an association formed for fraternal and beneficial purposes to impose a charge of ten per cent in favor of the plaintiff upon the dues and other payments of the members of its principal residing within a certain territory, merely as an inducement to him to invest in its own shares of stock, was a thing so much out of the regular course of business as to put any ordinarily prudent man on his guard.  Warned by the remarkable motive of the

transaction proposed to him, Mr. Edwards had no right to proceed blindly. He was bound either to refuse to deal further with the International Loan & Trust Company or to ascertain by inquiry of the governing body of the Heralds of Liberty the true extent of the authority confided to its "general grand deputy." His failure to make such an inquiry rendered him chargeable with notice of all that he would have discovered had he made it.

If the agreement which the plaintiff and the International Loan & Trust Company executed on December 14, 1914, proposed to bind the defendant, it would not, under the facts and principles above stated, have served to impose upon the latter any liability unless subsequently ratified or adopted by it. That instrument, however, was not made in the defendant's name. It does not profess to be the act and deed of the Heralds of Liberty. So far as its undertakings are not those of the plaintiff they are the promises of the International Loan & Trust Company, which covenants in its own name and for its own acts. It nowhere stipulates that the Heralds of Liberty will do or refrain from doing anything whatever. It merely binds the International Loan & Trust Company to procure certain things from the defendant. That the results contemplated by the contract did not come to pass was not occasioned by any breach on the part of the defendant. The breach of which the plaintiff may complain is that of the International Loan & Trust Company alone. In this connection, it may be observed that the wording of this statement was as fully indicative of the latter's lack of authority to bind the defendant as was the singular character of its terms.

In view of the way in which the contract above referred to is expressed there could be no question of its ratification by the defendant. "Since the effect of ratification is to confirm an act as done, it is indispensable that the act ratified must have been done by the assumed agent as agent and in behalf of a principal. If it was done by him as principal and on his own account

it cannot thus be ratified......The contract to be ratified must purport to have been made on account of the alleged principal so that when ratified it shall be capable of being enforced by and against that principal as a contract to which he was a party": Mecham on Agency, ss 386 and 387.

Nor can it be said that plaintiff established a case on the theory that the defendant "adopted" the contract of December 14, 1914. While ratification requires no new consideration for its support, the so-called "adoption" of a contract by a person not a party thereto, being of the nature of a novation, must be supported by one. No evidence was produced to show an advantage received by the defendant or a detriment sustained at its request by the plaintiff in this connection which might serve to make the defendant's adoption of the contract, if any such thing was attempted, binding upon it in law.

The plaintiff's motion to take off the nonsuit is dismissed.

*Error assigned* was refusal to take off nonsuit.

*George M. Henry,* with him *James Monaghan,* for appellant.—The defendant received and retained the benefit of the contract and is estopped from repudiating the authority of the agent: Hartzell v. Ebbvale Mining Co., 239 Pa. 602; Presbyterian Board v. Gilbee, 212 Pa. 310; Lemmon v. East Palestine Rubber Company, 260 Pa. 28, and Scouton v. Stony Brook Lumber Company, 261 Pa. 241.

The subject-matter of the contract was within the general scope of the business entrusted to the agent: Culver v. Pocono Spring Water Ice Co., 206 Pa. 481.

The defendant by its subsequent conduct ratified the acts of its agent and adopted them as its own: Balph v. Liberty Natl. Bank, 179 Pa. 430; Fenn v. Dickey, 168 Pa. 258; Imbrie v. Manhattan Life Ins. Co., 178 Pa. 6;

Phila. W. & B. R. R. Co. v. Cowell, 28 Pa. 329; Cake's App., 110 Pa. 65.

The agent's mode of execution of his authority was immaterial, the intention being to bind the principal: Baum v. Dubois, 43 Pa. 260; Swisshelm v. Swissville Laundry Co., 95 Pa. 367; Lancaster v. Knickerbocker Ice Co., 153 Pa. 427; Abrams v. Musgrove, 12 Pa. 292.

*George J. Edwards, Jr.,* for appellee.—The plaintiff when he began his negotiations, knew he was dealing with corporations, and he, therefore, was charged with knowledge of the limitations upon the authority of the corporate officers: Twelfth Street Market Co. v. Jackson, 102 Pa. 269; Millward-Cliff Cracker Co.'s Est., 161 Pa. 157; Bangor, etc., Ry. Co. v. American Bangor Slate Co., 203 Pa. 6; Smith v. Crum Lynne Iron & Steel Co., 208 Pa. 462; De Forest v. Northwest Townsite Co., 241 Pa. 78.

PER CURIAM, February 17, 1919:

This judgment is affirmed on the opinion of the learned president judge of the court below dismissing the motion to take off the nonsuit.