**In re Richard G. PAOLINO and Elaine M. Paolino, Debtors.**

**Bankruptcy No. 85–00759F.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 7, 1987.

See also, Bkrtcy., 71 B.R. 576.

Myron Bloom, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for Union Nat. Bank and Trust Co. and Univest Mortg. Co.

Jonathan H. Ganz, Andrew N. Schwartz, Pincus, Verlin, Hahn & Reich, P.C., Philadelphia, Pa., for debtor, Richard G. Paolino.

Arthur W. Lefco, David M. Giles, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for Home Unity Sav. and Loan Ass'n objector.

Michael H. Reed, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for trustee, Herbert Brener.

Nathan B. Feinstein, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for Dr. and Mrs. Paolino.

## OPINION

BRUCE FOX, Bankruptcy Judge:

On March 4, 1985, various creditors of Dr. Richard G. Paolino and his wife, Elaine M. Paolino, filed an involuntary chapter 11 bankruptcy petition against them. On May 24, 1985, this court entered an order for relief against the debtors. *In re Paolino*, 49 B.R. 834 (Bankr.E.D.Pa.1985). On October 2, 1985, the court appointed a trustee over the debtors' objection. *In re Paolino*, 53 B.R. 399 (Bankr.E.D.Pa.1985), *aff'd*, 60 B.R. 828 (E.D.Pa.1986).

From the outset of these proceedings, the debtors were represented by Mark Frost, Esquire. The order formally authorizing Frost to serve as counsel was entered on May 10, 1985.[1] Frost filed a motion to withdraw as counsel on March 18, 1986. That motion was granted on April 17, 1986. On May 6, 1986, an order was granted appointing the law firm of Pincus, Verlin, Hahn & Reich, P.C. ("Pincus") as

"counsel for the debtor."[2] Subsequently, the Pincus firm actively represented both Mr. and Mrs. Paolino in the numerous matters that have come before this court in this bitterly contested bankruptcy case.

On November 9, 1986, Mrs. Paolino filed a *pro se* "notice" with this court which declared that the Pincus firm was not and, in fact, had never been her counsel in this case. Since this development in the case brought into question the validity, as to Mrs. Paolino, of numerous orders which were entered after Frost's withdrawal as counsel,[3] the court treated Mrs. Paolino's "notice" as a motion seeking a declaration of her rights. A hearing was scheduled for December 3, 1986. On that date, Mrs. Paolino appeared, without counsel, and requested additional time to obtain counsel to represent her. She stated that four weeks would be sufficient time for her to obtain counsel. This court granted her request and continued the hearing until January 5, 1987, on a "must be tried" basis. Due to the need to proceed with the administration of this case, the court informed Mrs. Paolino that the hearing would go forward on January 5, 1987, regardless whether she had counsel at that time.

The hearing was held and completed on January 5, 1987. Mrs. Paolino appeared without counsel and represented herself at the hearing. Four witnesses testified at the hearing: Jonathan Ganz, Esquire, an attorney with the Pincus firm; Dr. Paolino; Mrs. Paolino; and Myron A. Bloom, Esquire, an attorney representing one of the Paolinos' creditors. Mrs. Paolino was afforded the opportunity to examine the other witnesses and the court assisted her in laying the foundation necessary for the introduction into evidence of her exhibits.

1. The order also appointed the law firm of Dilworth, Paxson, Kalish & Kauffman as co-counsel. Nathan Feinstein, Esquire of that law firm represented the debtors in opposing the entry of the order for relief and the appointment of a trustee. As explained in the findings of fact below, after the court ruled against the debtors on those issues, Feinstein ceased participating in the case. It appears from the docket, however, that he has not been granted leave of court to withdraw as counsel and remains as counsel of record.

2. Although the motion used the singular term "debtor," the caption of the motion referred to Dr. and Mrs. Paolino collectively as the "debtor."

3. Between May 6, 1986, when the Pincus firm was appointed counsel, to November 9, 1987, when Mrs. Paolino filed the "notice," more than twenty orders were entered by the court.

At the conclusion of the hearing, a briefing schedule was established. The court modified, over objection, the ordinary practice of requiring the moving party to file the first brief, in deference to Mrs. Paolino's status as a *pro se* litigant. The parties objecting to Mrs. Paolino's request in the nature of declaratory relief were granted ten days after the notes of testimony became available to file proposed findings of fact and conclusions of law. Mrs. Paolino was granted ten days to file a response and the objecting parties were granted five days to file a reply.

After the notes of testimony became available, post-trial submissions in opposition to Mrs. Paolino's motion were received from two creditors and the trustee. Mrs. Paolino has not filed any written response.[4] At this point, more than four weeks after Mrs. Paolino's response was due, I can no longer defer resolution of this issue which significantly affects the administration of this case.

After considering the evidence, I conclude that (1) Mrs. Paolino, through her husband acting as her actual and apparent agent, entered into an attorney-client relationship with the Pincus firm and (2) that the attorney-client relationship was severed on November 9, 1986. Set forth below are my findings of fact and conclusions of law issued pursuant to Bankr.Rule 9014 and 7052.[5]

## FINDINGS OF FACT

1. Elaine M. Paolino, the movant herein, is an individual residing at 7 Canal Run West, Washington Crossing, PA.

2. Dr. Richard G. Paolino is Elaine Paolino's husband and resides at the same address.

3. During the years subsequent to 1977, Dr. and Mrs. Paolino purchased various real properties, including income producing properties, as tenants by the entireties.

4. As between Dr. and Mrs. Paolino, it was Dr. Paolino who was responsible for managing their jointly owned property. His authorized duties included: collection of the rent from the tenants and payment of the mortgage and all expenses relating to the subject properties.

5. Mrs. Paolino relied on her husband's judgment and delegated to him all of the decisions regarding the management of their jointly held properties.

6. On October 22, 1984, Home Unity Savings and Loan ("Home Unity") filed a mortgage foreclosure action in state court. This action concerned the Paolino's jointly held property and named both of them as defendants.

7. Dr. Paolino hired Mark Frost, Esquire to defend the foreclosure action.

8. Frost represented both Dr. and Mrs. Paolino in the mortgage foreclosure proceeding.

9. Mrs. Paolino did not personally request Frost to represent her in the mortgage foreclosure action. Rather she relied on Dr. Paolino, as her agent, to select and hire counsel in that case. She was aware that Dr. Paolino had hired Frost and that Frost was representing her as well as her husband. She also relied on her husband to make all of the decisions regarding the litigation. In fact, Frost communicated only with Dr. Paolino.

10. A judgment in mortgage foreclosure was entered in favor of Home Unity and a sheriff's sale of the Paolinos' jointly held property was scheduled in the state court case.

11. Mrs. Paolino was aware that the jointly held property was scheduled for sheriff's sale.

12. Prior to the sheriff's sale, the Paolinos filed a joint, voluntary bankruptcy petition under chapter 13.

---

**4.** I note that Mrs. Paolino has obtained counsel to represent her in other matters which have arisen in this case. I can only conclude that the attorney's failure to participate in the issue now before me is the product of a conscious decision on Mrs. Paolino's part.

**5.** This matter is a core proceeding, *see* 28 U.S.C. § 157(b)(2)(A), and I will therefore enter a binding order.

13. Mrs. Paolino authorized her husband to sign her name to the voluntary chapter 13 petition.

14. Dr. Paolino hired Frost to represent both himself and his wife in the chapter 13 case.

15. As with the mortgage foreclosure case, Mrs. Paolino did not personally ask Frost to represent her in the chapter 13 case and delegated all decisions regarding the bankruptcy to her husband. Again, she was aware that Dr. Paolino had hired Frost and that Frost was representing her as well as her husband in the bankruptcy case. She made no effort to ascertain what Frost was doing on her behalf and did not contact him. In addition, she permitted her husband to make the decision to voluntarily dismiss the chapter 13 case and simply inform her of the decision.

16. The chapter 13 voluntary petition was voluntarily dismissed prior to May 24, 1985.

17. On May 24, 1985, various creditors filed an involuntary bankruptcy petition under chapter 11 against the Paolinos.

18. Various creditors also filed a motion requesting that the court appoint a trustee in the bankruptcy case.

19. Dr. Paolino hired Frost and Nathan Feinstein, Esquire of the law firm of Dilworth, Paxson, Kalish & Kauffman to represent both himself and Mrs. Paolino in contesting the involuntary petition and the motion for appointment of a trustee.

20. Once again, Mrs. Paolino did not personally ask Frost and Feinstein to represent her in the chapter 11 case and delegated all decisions regarding the bankruptcy to her husband. She was aware that her husband had hired Frost and Feinstein and that the attorneys were representing her as well as her husband in this involuntary chapter 11 case.[6] She made no effort to ascertain what actions Frost and Feinstein were taking on her behalf and did not communicate with either of them.

21. On May 10, 1985, this court entered an order authorizing Frost and Feinstein to serve as counsel for the debtors in this case.

22. On May 24, 1985, this court entered an order for relief against the debtors.

23. On October 2, 1985, the court appointed a trustee over the debtors' objection.

24. In approximately October 1985, Feinstein ceased participating in this case as debtors' counsel, although no order has been entered granting him leave to withdraw.

25. Although Mrs. Paolino claims that she was unaware that Frost and Feinstein had ceased representing her, I find her testimony incredible and unworthy of belief. To the contrary, I find that Dr. Paolino was aware of counsel's withdrawal from the case and communicated that information to Mrs. Paolino.

26. Some time in April 1986, Dr. Paolino met with Jonathan Ganz, Esquire, of the Pincus firm, to discuss these chapter 11 proceedings.

27. The Pincus firm obtained the files regarding these chapter 11 proceedings from Frost, who had represented both debtors.

28. Dr. Paolino never informed the Pincus firm that only he and not Mrs. Paolino wanted representation.

29. Dr. Paolino requested the representation of the Pincus firm in this bankruptcy case. In so doing, he intended that the Pincus firm represent himself and Mrs. Paolino. To the extent he may have testified otherwise, his testimony was not credible.

30. The Pincus firm's appointment as counsel was authorized by order of this court dated May 6, 1986. At all times thereafter, until approximately November 1, 1986, the Pincus firm believed that it represented both Dr. and Mrs. Paolino. The firm intended its representation to be

---

**6.** Mrs. Paolino expressly stated at trial that she understood that Frost and Feinstein represented her as well as her husband.

for the mutual benefit of Dr. and Mrs. Paolino.

31. Mrs. Paolino has not identified any issue in this bankruptcy case in which her interest differs from that of her husband.

32. Dr. Paolino requested that the Pincus firm send copies of all correspondence, pleadings and other documents to him at his business address. This was consistent with the Paolinos' prior course of conduct in which Mrs. Paolino delegated all responsibility for managing their family held property and handling the litigation arising therefrom to her husband.

33. Although Mrs. Paolino claims that she was unaware that the Pincus firm was representing her, I find her testimony incredible and unworthy of belief. To the contrary, I find that Dr. Paolino hired Pincus to represent both himself and his wife, was aware of counsel's actions on behalf of both debtors and informed Mrs. Paolino of significant developments in the case. The withdrawal of one attorney and the hiring of another attorney for the debtors was one such significant development.

34. On June 13, 1986, hearings were scheduled in this court on several contested matters. At that time, various creditors and their counsel were present and Dr. Paolino was present. Mrs. Paolino was not present.

35. On June 13, 1986, an "agreement" was read into the record to resolve the various pending contested matter.[7]

36. In light of the significance of the June 13, 1986 "agreement," I infer from the evidence that Dr. Paolino promptly informed Mrs. Paolino of the actions he took in court on their behalf on June 13, 1986.

37. Subsequently, the "agreement" was put into writing by creditors' counsel and the Pincus firm on behalf of the debtors. During this process, the exact wording of the "agreement" was altered and agreed upon by counsel for the interested parties, including the debtors' counsel.

38. Prior to July 24, 1986, Dr. Paolino informed the Pincus firm that he objected to the writing prepared by his counsel and counsel for the creditors because it did not embody the understanding he believed he made on June 13, 1986.

39. In addition, Dr. Paolino informed the Pincus firm prior to July 24, 1986, that Mrs. Paolino objected to the writing on the ground that Dr. Paolino had no authority to make any agreement on her behalf on June 13, 1986, and that she, too, would not sign the writing prepared by the attorneys.

40. By letter dated July 24, 1986, the Pincus firm informed counsel for one of the creditors and counsel for the trustee that neither Dr. Paolino nor Mrs. Paolino would sign the writing counsel had prepared.

41. From July 1986 to November 1, 1986, Mrs. Paolino did not inform the Pincus firm or any party in interest that she did not consider the Pincus firm to be her counsel.

42. On November 1, 1986, Mrs. Paolino wrote a letter to the Pincus firm which stated, in effect, that the firm did not and never had represented her in this bankruptcy case.

43. On November 9, 1986, Mrs. Paolino filed a "notice" with this court which declared that the Pincus firm was not and never had been her counsel in this bankruptcy case.

44. Mrs. Paolino relied upon and gave actual and apparent authority to her husband to make all decisions in the involuntary chapter 11 bankruptcy case, including the selection of counsel.

45. After Frost withdrew as counsel, Mrs. Paolino took no action to withdraw the authority she had previously vested in her husband to select counsel.

46. While Mrs. Paolino denies that she was aware of Frost's withdrawal as counsel and the selection of the Pincus firm as new counsel, her testimony is not credible because:

---

7. Actually, whether or not Dr. Paolino entered an enforceable settlement agreement on behalf of himself and/or Mrs. Paolino on June 13, 1986, is the subject of a separate contested proceeding. I do not pass on that question in this decision.

(a) the selection of the Pincus firm as counsel and the decision to deal with counsel exclusively through Dr. Paolino is consistent with the Paolinos' prior course of conduct in the state court mortgage foreclosure case, the chapter 13 proceeding and the initial stages of the chapter 11 proceedings;

(b) it is inconceivable that Dr. Paolino did not advise his wife of major developments, including the withdrawal of their attorney (Frost) and the hiring of new counsel (Pincus), in legal proceedings which Mrs. Paolino believes have "ruined her life." (*See* Exhibit UNB-6);

(c) I found Mrs. Paolino to be an evasive witness with a selective memory for only those facts she believed to be helpful to her case. Her overall demeanor convinces me that her testimony was not wholly truthful.

### CONCLUSIONS OF LAW

1. Dr. Paolino had actual authority to act as Mrs. Paolino's agent throughout the foreclosure and bankruptcy proceedings and had actual authority to act on her behalf without her specific authorization.

2. Dr. Paolino had actual authority from Mrs. Paolino to retain counsel to represent her interests in the involuntary chapter 11 bankruptcy proceedings.

3. Dr. Paolino exercised his actual authority and retained the Pincus firm to represent Mrs. Paolino in the chapter 11 case.

4. Dr. Paolino had apparent authority to retain the Pincus firm to represent Mrs. Paolino in the chapter 11 case.

5. Dr. Paolino exercised the apparent authority to retain the Pincus firm to represent Mrs. Paolino in the chapter 11 case.

6. The Pincus firm had actual authority until November 1, 1986 and apparent authority until November 9, 1986 to act on behalf of Mrs. Paolino.

### DISCUSSION

As set forth above, Mrs. Paolino delegated all responsibility for the management of her jointly held entireties property to her husband for many years. The authority delegated included the power to hire counsel to protect the Paolinos' joint interests. Acting within this authority, Dr. Paolino engaged counsel to represent them, *inter alia,* in this chapter 11 case. Mrs. Paolino now comes to this court at the eleventh hour and, after accepting without protest the benefits of the Pincus firm's representation, she seeks a determination that she has, in fact, been unrepresented for a significant period of time in this case and has thereby been deprived of notice and opportunity to be heard on matters which affect her interests. I find her explanation of the facts unbelievable and, under settled principles of Pennsylvania law, her position wholly without legal merit.

The legal principles which govern this case are those of agency. Under Pennsylvania law, there is no automatic, general agency arising from the marital relationship. However, there is a presumption with respect to entireties property that either spouse has the power to act for both without any specific authority, so long as the acting spouse's action benefits both. This presumption, with respect to entireties property, does not require knowledge on the part of the other spouse. The presumption can be rebutted by evidence that the acting spouse was not authorized to act for both. *See J.R. Christ Construction Co.,* 426 Pa. 343, 232 A.2d 196 (1967); *Bradney v. Sakelson,* 325 Pa.Super. 519, 473 A.2d 189 (1984).

■ In this case, Dr. Paolino obtained the services of the Pincus firm to protect his interests and those of Mrs. Paolino in entireties property. This action, taken for the benefit of both spouses, is binding on Mrs. Paolino as she has not established that Dr. Paolino lacked such authority. Indeed, the evidence is overwhelmingly to the contrary. The record establishes that Mrs. Paolino gave her husband actual, express authority to act on behalf of both of them: (1) in managing the jointly held properties; (2) in the Home Unity mortgage foreclosure action; (3) in the chapter 13 proceeding; and (4) during the involuntary chapter 11 proceeding. The authority given included

the power to retain counsel. The course of conduct was the same throughout the various legal proceedings—Dr. Paolino would hire counsel and be the exclusive contact person with the attorney on behalf of himself and his wife. Mrs. Paolino expressly approved this arrangement. This history provides an ample basis to conclude that Dr. Paolino had actual authority to retain the Pincus firm on behalf of both himself and his wife in April 1986. *See Sidle v. Kaufman,* 345 Pa. 549, 29 A.2d 77 (1942); *Tonuci v. Beegal,* 188 Pa.Super. 66, 145 A.2d 885 (1958).

■ The evidence also supports the conclusion that Dr. Paolino had apparent authority to hire the Pincus firm on behalf of Mrs. Paolino. In *Revere Press, Inc. v. Blumberg,* 431 Pa. 370, 375, 246 A.2d 407, 412 (1968), the Pennsylvania Supreme Court defined apparent authority as the

> power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power.

*Accord, Universal Computer Systems, Inc. v. Medical Services Association,* 628 F.2d 820 (3d Cir.1980); *In re Silberman,* 30 B.R. 219 (Bankr.E.D.Pa.1983); *Jennings v. Pitts Mercantile Co.,* 414 Pa. 641, 202 A.2d 51 (1964).

In this case, Mrs. Paolino clearly allowed her husband to hire Frost and Feinstein on her behalf. She claims, however, that she was totally unaware of her husband's retention of the Pincus firm in late April, early May 1986. I do not believe her testimony and conclude that she was aware of her husband's action. *See* Finding of Fact No. 46. Thus, even if there were no actual authority delegated to Dr. Paolino, Mrs. Paolino knowingly allowed him to retain the Pincus firm to represent both of them. Since prior counsel had represented both Paolinos, it was certainly reasonable for

the Pincus firm to believe that it represented both husband and wife and, indeed, the Pincus firm testified that it did believe it represented both debtors.

■ This same reasoning leads to the conclusion that the Pincus firm had apparent authority to bind Mrs. Paolino. Mrs. Paolino was aware that the Pincus firm had been engaged as counsel. She knowingly permitted parties who dealt with the Pincus firm to believe that it represented her. She took no action for many months to inform anyone that the Pincus firm did not represent her. And, in light of all of the circumstances, it was certainly reasonable for parties who dealt with the Pincus firm to believe that it had authority to represent Mrs. Paolino.

Based on the foregoing, I conclude that Mrs. Paolino is not entitled to any relief in this matter. An order consistent with this opinion will be entered.