In re Richard G. PAOLINO and Elaine M. Paolino, Debtors.

Bankruptcy No. 85–00759G.

United States Bankruptcy Court, E.D. Pennsylvania.

April 8, 1988.

Myron A. Bloom, Adelman Lavine Gold and Levin, Philadelphia, Pa., for movants, Union Nat. Bank and Trust Co. and Univest Mortg. Co.

Jeffry Meyers, Charleston & Fenerty, Philadelphia, Pa., for objector, Elaine M. Paolino.

Jonathan H. Ganz, Pincus, Verlin, Hahn & Reich, P.C., Philadelphia, Pa., for husband/debtor, Richard G. Paolino.

Michal H. Reed, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for trustee, Herbert Brener.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Presently before me in this matter is a motion by Union National Bank (UNB) and Univest Mortgage Company (Univest) to deem a settlement agreement binding against Elaine M. Paolino. A hearing on the motion was held October 19, and November 16, 1987.

As set forth below in findings of fact and conclusions of law, the instant motion will be granted. Preliminarily, however, for purposes of clarity, I will summarize the contorted procedural history of this dispute as well as my two prior reported opinions related to this matter.

The debtors in this involuntary proceeding are Dr. Richard G. Paolino and Mrs. Elaine M. Paolino, husband and wife. The movants, UNB and Univest are creditors of the Paolinos who have initiated a number of adversary proceedings and contested matters against the debtors including but not limited to a dischargeability complaint, a complaint to recover the proceeds of a sale of real estate, a motion for relief from the automatic stay and various motions for sanctions.

On June 13, 1986, after negotiations, the parties agreed to settle certain of the pending matters and reported their agreement on the record in open court. At that time Dr. Paolino was called as a witness and testified that he understood and agreed to the settlement as it had been reported to the court.

Subsequently, the parties attempted to reduce the agreement to writing. The Paolinos, however, refused to sign the written agreement and asserted instead that they were not bound by the settlement. After former Chief Judge Goldhaber entered an order incorporating the unsigned written agreement as drafted by counsel, upon appeal, the matter was remanded by the district court on November 20, 1986, for a determination as to whether a binding agreement had been reached. At that point, UNB and Univest filed a motion to enforce or deem binding the June 13, 1986 settlement agreement. *See Saber, Bertram and B & E Productions, Inc. v. Financeamerica Credit Corp.*, 843 F.2d 697, 700, n. 5 (3rd Cir.1988) ("Settlement agreements may be enforced by means of a motion filed with the underlying cause of action and need not be asserted in the form of a complaint and answer.")

As to Dr. Paolino, I conducted three days of hearings and ultimately issued a memorandum opinion reported at *In re Paolino*, 78 B.R. 85 (Bankr.E.D.Pa.1987) *aff'd* C.A. 87–6961 (E.D.Pa. December 17, 1987). I concluded that the settlement was valid, binding and enforceable as to Dr. Paolino, based on his participation in the settlement negotiation process and his testimony in open court that he understood and consented to the settlement.

As to Mrs. Paolino, the history of this matter is somewhat more complex. On November 9, 1986, while the appeal of Judge Goldhaber's order incorporating counsel's written terms of settlement was still pending, Mrs. Paolino filed a *pro se* "notice" with this court stating that the

law firm of Pincus, Verlin, Hahn & Reich, P.C. (Pincus), which had represented Dr. Paolino during the settlement negotiations, was not and had never been her counsel in this case. Treating the notice as a motion for a declaration of her rights, I held a hearing, at which Mrs. Paolino appeared *pro se.*[1] Subsequently, I issued an opinion reported at *In re Paolino*, 72 B.R. 323 (Bankr.E.D.Pa.) *aff'd.* 75 B.R. 553 (E.D.Pa. 1987)[2] in which I concluded that "[t]he Pincus firm had actual authority until November 1, 1986, and apparent authority until November 9, 1986, to act on behalf of Mrs. Paolino." 72 B.R. at 328. I further determined that "Dr. Paolino had actual authority to act as Mrs. Paolino's agent throughout the foreclosure and bankruptcy proceedings and had actual authority to act on her behalf without her specific authorization." *Id.* I specifically, however, reserved judgment on the issues presented by the instant motion: i.e. whether the settlement agreement of June 13, 1986 is binding on Mrs. Paolino. 72 B.R. at 327, n. 7.

On October 19, 1987, the parties appeared at a hearing specifically related to this motion. Mrs. Paolino was represented by counsel other than the Pincus firm, which has continued to represent Dr. Paolino. UNB and Univest, upon stipulation with separate counsel for Dr. and Mrs. Paolino offered into evidence all of the pleadings, transcripts and exhibits related to the June 13, 1986 settlement agreement and subsequent motion to enforce as to Dr. Paolino and all of the pleadings, transcripts and exhibits related to the motion of Mrs. Paolino for a declaration of her rights. At that point, the movants rested. Counsel

for Mrs. Paolino thereupon called Dr. Paolino who testified about certain conversations he claimed to have had previously with representatives of UNB and Univest. Because Dr. Paolino's testimony came as a surprise not only to counsel for UNB and Univest, but also to counsel for Mrs. Paolino, who only learned of the alleged conversations on the morning of the hearing, I agreed to schedule a supplemental hearing for rebuttal testimony. At that hearing, held November 16, 1987, the representatives of UNB and Univest with whom Dr. Paolino had allegedly spoken denied that the conversations had taken place.

After the second hearing, I took the matter under advisement. Upon consideration, I make the following findings of fact and conclusions of law as supplemented by the ensuing discussion.

## FINDINGS OF FACT

1. The findings of fact and conclusions of law made in my memorandum opinion reported at *In re Paolino*, 78 B.R. 85 (Bankr.E.D.Pa.1987), *aff'd.* C.A. 87–6961 (E.D.Pa. Dec. 17, 1987), and in my opinion reported at *In re Paolino*, 72 B.R. 323 (Bankr.E.D.Pa.) *aff'd.* 75 B.R. 553 (E.D.Pa.1987) are applicable to this matter and are incorporated herein by reference. For the purposes of clarity, certain of those findings and conclusions will be repeated here.

2. During the course of this case, both Univest and UNB filed various motions and complaints in this court including, but not limited to, the following:

(a) A complaint pursuant to section 523 of the Bankruptcy Code against both Dr.

---

1. Because that motion was still under advisement when the instant motion to have the settlement deemed binding came before me for hearing, Univest and UNB chose to bifurcate this motion and have it heard separately as to Dr. Paolino and Mrs. Paolino.

2. Certain of the other myriad issues which have arisen in this case have generated opinions reported at *In re Paolino*, 49 B.R. 834 (Bankr.E.D. Pa.1985) (granting the involuntary petition); *In re Paolino*, 53 B.R. 399 (Bankr.E.D.Pa.1985) *aff'd.* 60 B.R. 828 (E.D.Pa.1986) (appointing a trustee); *In re Paolino*, 61 B.R. 607 (Bankr.E.D.

Pa.1986) (denying relief to a second motgagee); *In re Paolino*, 68 B.R. 416 (Bankr.E.D.Pa.1986) (granting relief from the stay in favor of a secured creditor); *In re Paolino*, 71 B.R. 576 (Bankr.E.D.Pa.1987) (limiting attorneys fees awarded to counsel for creditors); *In re Paolino*, 72 B.R. 555 (Bankr.E.D.Pa.1987) (denying reconsideration of order and opinion recorded at 68 B.R. 416); *In re Paolino*, 75 B.R. 641 (Bankr. E.D.Pa.1987) (denying summary judgment to Mrs. Paolino on dischargeability complaint); *In re Paolino*, 80 B.R. 341 (Bankr.E.D.Pa.1987) (granting former trustee partial compensation).

Paolino and Mrs. Paolino seeking to have a $208,000.31 debt of the debtors owing to UNB (plus interest as allowed by law) to be determined to be non-dischargeable. That action was docketed at Adv. No. 86–0060.

(b) A complaint filed on behalf of Univest seeking a determination that certain proceeds of the sale of real estate were not property of the estate, and for an order directing the transfer of those proceeds directly to Univest. That action was docketed at Adv. No. 86–0181.

(c) A motion filed pursuant to the provisions of section 362 of the Bankruptcy Code by Univest for relief from the automatic stay so that Univest could proceed to exercise its rights under law by virtue of the debtors' default under certain agreements pursuant to which they acquired an equitable ownership interest in a parcel of land and a building situated thereon, commonly known as the William Tennent Middle School located in Bucks County, Pennsylvania. *Paolino*, 78 B.R. at 86–87.

3. With respect to the complaint docketed at Adv. No. 86–0060, the defendants, Dr. and Mrs. Paolino, failed to file an answer thereto and accordingly, UNB filed an application pursuant to Bankruptcy Rule 7055 for the entry of a judgment by default. The court granted that motion on April 14, 1986. *Id.* at 87.

4. With respect to adversary No. 86–0181, Univest served upon the Paolinos notice of depositions and requests for production of documents. The Paolinos, in response, filed a motion for protective order which was denied by the court. However, notwithstanding the denial of their motion for protective order, the Paolinos failed to appear for the depositions scheduled. Accordingly, Univest filed a motion for sanctions in this proceeding, seeking an order granting it judgment in the action against the Paolinos. *Id.*

5. With respect to the motion for relief from automatic stay, Univest filed and served upon the defendants notices of deposition and requests for production of documents: again, the Paolinos moved for a protective order which was denied, and notwithstanding that denial, the Paolinos

failed to appear at the depositions as scheduled. In this action, Univest filed a motion for sanctions seeking that an order in its favor and against the Paolinos be entered. *Id.*

6. The court scheduled for June 13, 1986, a hearing on various motions and adversary proceedings. Insofar as they relate to the instant motion, these motions and complaints were:

(a) the motion for relief from automatic stay under section 362 of the Bankruptcy Code with respect to the realty commonly known as the William Tennent Middle School.

(b) the motion for sanctions filed on behalf of Univest in connection with the above referenced section 362 motion.

(c) the complaint filed on behalf of Univest (Adv. No. 86–0181) seeking to have turned over to it the $101,000.00 being held by the Sheriff of Bucks County, Pennsylvania.

(d) the motion for sanctions filed on behalf of Univest in that adversary proceeding. *Id.*

7. At the time and date scheduled for hearing these motions, Dr. Paolino appeared with counsel and negotiations took place. *Id.*

8. At the conclusion of the negotiations, the parties appeared before (then) Chief Bankruptcy Judge Goldhaber and counsel read into the record the terms and conditions of the settlement which was arrived at among Dr. Paolino and his counsel, UNB and Univest and its counsel, and the trustee and his counsel. *Id.*

9. Thereafter, Dr. Paolino was placed under oath and testified that he understood and agreed to all of the terms of the settlement as set forth in open court. *Id.* at 88.

10. Dr. Richard G. Paolino and Elaine M. Paolino are husband and wife; they reside together at the same address.

11. Some time in April 1986, Dr. Paolino met with Jonathan Ganz, Esquire, of the Pincus firm, to discuss these chapter 11 proceedings. *Paolino*, 72 B.R. at 326.

12. Dr. Paolino never informed the Pincus firm that only he and not Mrs. Paolino wanted representation. *Id.*

13. Dr. Paolino requested the representation of the Pincus firm in this bankruptcy case. In so doing, he intended that the Pincus firm represent himself and Mrs. Paolino. To the extent he may have testified otherwise, his testimony was not credible. *Id.*

14. The Pincus firm's appointment as counsel was authorized by order of this court dated May 6, 1986. At all times thereafter, until approximately November 1, 1986, the Pincus firm believed that it represented both Dr. and Mrs. Paolino. The firm intended its representation to be for the mutual benefit of Dr. and Mrs. Paolino. *Id.* at 326–27.

15. Mrs. Paolino has not identified any issue in this bankruptcy case in which her interest differs from that of her husband. *Id.* at 327.

16. Mrs. Paolino was not present in court on June 13, 1986 and did not participate in the settlement negotiations which took place on that date. However, based on the evidence of the course of conduct between Dr. Paolino, his wife and their various attorneys enumerated in my opinion, *Paolino*, 72 B.R. 323–28, I conclude that Dr. Paolino was acting as Mrs. Paolino's agent at all times during his participation in the proceeding of June 13, 1986. During those proceedings, he had both actual and apparent authority to agree to settlement on behalf of Mrs. Paolino.

17. In light of the significance of the June 13, 1986 "agreement," I infer from the evidence that Dr. Paolino promptly informed Mrs. Paolino of the actions he took in court on their behalf on June 13, 1986. *Paolino*, 72 B.R. at 327.

18. Subsequently, the "agreement" was put into writing by creditors' counsel and the Pincus firm on behalf of the debtors. During this process, the exact wording of the "agreement" was altered in nonmaterial ways and agreed upon by counsel for the interested parties, including the debtors' counsel. *See Id.*

19. Mrs. Paolino took no immediate action to object to or repudiate the settlement made on June 13, 1986. Subsequently, however, shortly prior to July 24, 1986 Dr. Paolino informed the Pincus firm that Mrs. Paolino objected to the writing prepared to memorialize the June 13, 1986 agreement on the ground that Dr. Paolino had no authority to make any agreement on her behalf.

20. From July 1986 to November 1, 1986, Mrs. Paolino did not inform the Pincus firm or any party in interest that she did not consider the Pincus firm to be her counsel. *Paolino*, 72 B.R. at 327.

21. On November 1, 1986, Mrs. Paolino wrote a letter to the Pincus firm which stated, in effect, that the firm did not and never had represented her in this bankruptcy case. *Id.*

22. On November 9, 1986, Mrs. Paolino filed a "notice" with this court which declared that the Pincus firm was not and never had been her counsel in this bankruptcy case. *Id.*

23. At the hearing in this particular matter, Dr. Paolino testified that in the courthouse on June 13, 1986 he had held two discussions with parties related to this dispute about his authority to represent the interests of his wife. Dr. Paolino testified that he spoke to William S. Aichele, Executive Vice President of UNB and Vice President of Univest and informed him that he did not represent the interests of his wife. He also testified that he spoke with Jules Pearlstine, Esquire, a member of the Board of Directors of UNB and told him that he could not speak for his wife. Both Aichele and Pearlstine later testified and vigorously denied that the asserted conversation had taken place. Based on the course of the Paolino's participation in this case, the testimony of Dr. Paolino on June 13, 1986 during the course of which he did not indicate in any way that he had no authority to settle on behalf of Mrs. Paolino and on the demeanor of the witnesses, I conclude that the asserted conversations containing the express disavowal by Dr. Paolino of his wife's interest did not take place.

24. Mrs. Paolino failed to take timely and appropriate action to protect her rights. Not only did she fail to appear at the various hearings scheduled for June 13, 1986, and at the negotiations that took place at that time, all of which greatly affected her interests, but also it was not until approximately July 24, 1986 that *Dr. Paolino* informed the *Pincus firm* that he had no authority to make an agreement on her behalf. It was not until November 9, that Mrs. Paolino informed the court that the Pincus firm did not represent her. Thus, even if I had not concluded that Dr. Paolino had authority to enter a binding settlement on her behalf, I would nevertheless conclude that Mrs. Paolino ratified the agreement by failing to come forward quickly to inform the court and parties to this dispute that she believed she was not bound by the settlement.

25. Upon review of the written draft of counsel memorializing the terms of settlement, Dr. and Mrs. Paolino concluded they had made a bad bargain. Mrs. Paolino's assertion that she did not authorize Dr. Paolino to settle this matter on her behalf constitutes an attempt to escape the effects of the settlement.

## CONCLUSIONS OF LAW

1. Dr. Paolino acted pursuant to actual authority on June 13, 1986 and thereby bound Mrs. Paolino to the settlement.

2. Mrs. Paolino ratified the settlement by failing to come forward in a timely and appropriate manner to inform the court and the parties that Dr. Paolino had no power to bind her to the settlement of June 13, 1986.

## DISCUSSION

A settlement agreement is a contract which must be interpreted and enforced in accordance with relevant principles of contract law. *Green v. John H. Lewis & Co.,* 436 F.2d 389 (3rd Cir.1970); *Plymouth Mutual Life Insurance Co. v. Illinois Mid–Continent Life Insurance Co.,* 378 F.2d 389 (3rd Cir.1967). *See also, Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.,* 834 F.2d 677 (7th Cir.1987). To determine whether a settlement agreement is binding on a party, a federal court must turn to state law. *In re Lady Madonna Industries, Inc.,* 76 B.R. 281 (S.D.N.Y.1987); *In re Chism,* 57 B.R. 23 (Bankr.M.D.Ala.1985). Here, the law of Pennsylvania applies.

"An agreement to settle a law suit voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court and even in the absence of a writing." *Green v. John H. Lewis & Co.,* 436 F.2d 389, 390 (3rd Cir.1970); *Good v. Pennsylvania R.R. Co.,* 384 F.2d 989 (3rd Cir.1967); *Morris v. Gaspero,* 522 F.Supp. 121 (E.D.Pa.1981); *Paolino,* 78 B.R. at 89. As a matter of public policy, courts are to favor voluntary settlements of litigation. *See Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Gomes v. Brodhurst,* 394 F.2d 465 (3rd Cir.1967); *Pugh v. Super Fresh Food Markets, Inc.,* 640 F.Supp. 1306 (E.D. Pa.1986).

The issue in the case at bench is whether a voluntary settlement of litigation was made which is binding as to Mrs. Paolino. I have already held that the events which transpired on June 13, 1986 constituted a voluntary and binding settlement as to Dr. Paolino. *In re Paolino,* 78 B.R. 85 (Bankr. E.D.Pa.1987) *aff'd.* C.A.87–6961 (E.D.Pa. December 17, 1987). In open court on that date, Dr. Paolino personally acknowledged and accepted the terms of the settlement. Because Mrs. Paolino was not present on that date, however, and now denies that she consented to the settlement, the issues as to her are quite different from those which I addressed in connection with this motion as to Dr. Paolino. I must determine whether either the Pincus firm or Dr. Paolino had the authority to bind Mrs. Paolino to the settlement of June 13, 1986.

In Pennsylvania, an attorney may compromise a client's case when that attorney has been given express actual authority to do so. A client is not bound to a settlement by his or her attorney's apparent authority to settle. *Rothman v. Fillette,* 503 Pa. 259, 469 A.2d 543 (1983); *Archbish-*

*op v. Karlak,* 450 Pa. 535, 299 A.2d 294 (1973). *See Daly v. Bright,* 413 F.Supp. 28 (E.D.Pa.1975). I have previously concluded in this case that "[t]he Pincus firm had actual authority until November 1, 1986 and apparent authority until November 9, 1986 to act on behalf of Mrs. Paolino." *Paolino,* 72 B.R. at 328 (Conclusion of Law # 6). No testimony or other evidence was offered in connection with this motion which would alter that conclusion.

However, an attorney's general power to act on behalf of a client does not itself give rise to the actual authority necessary to settle a cause of action. *Garabedian v. Allstates Engineering Co.,* 811 F.2d 802 (3rd Cir.1987). *See Edwards v. Born,* 792 F.2d 387, 390 (3rd Cir.1986). Because a client's ability to understand the terms and conditions of a proposed settlement is relevant to a determination of whether actual authority to settle the case was given, an attorney must review the terms of the proposed settlement with the client prior to obtaining actual authority.[3] *See In re Gsand,* 153 F.2d 1001 (3rd Cir.1946); *Autera v. Robinson,* 419 F.2d 1197, 1201 n. 13 (D.C.Cir.1969). It is the client's burden to establish that his or her attorney lacked the requisite authority. *Edwards v. Born, Inc.,* 792 F.2d at 390: "a settlement, once entered, may be set aside only if the client produces proof that the attorney had no right to consent to its entry". *See also* e.g., *In re Scott,* 82 B.R. 760, 762 (Bankr.E.D.Pa.1988).[4]

■ In the case at bench Mrs. Paolino produced evidence that she had never spoken directly with any member of the Pincus firm prior to June 13, 1986. Under such circumstances I find that she could not have directly provided the Pincus firm with actual authority to settle. In view of my conclusion that she gave actual authority to settle to her husband as agent which he exercised by consenting to the settlement in open court, I find that I need not decide whether the Pincus firm had actual authority to settle on behalf of Mrs. Paolino provided by Dr. Paolino as her agent.

"Under Pennsylvania law, an agent may bind his principal to third persons where 'his acts are within the scope of the authority which the principal has caused or permitted him to possess' " *William B. Tanner Co., Inc. v. WIOO, Inc.,* 528 F.2d 262, 267 (3rd Cir.1975) *quoting Edwards v. Heralds of Liberty,* 263 Pa. 548, 107 A. 324, 325 (1919). Thus if a principal sends an agent to court to negotiate on his or her behalf and vests that agent with actual authority to compromise and settle, the resulting settlement is binding on the principal.[5]

■ I have already concluded based on evidence incorporated into this proceeding "Dr. Paolino had actual authority to act as Mrs. Paolino's agent throughout the fore-

---

3. I, of course, do not conclude that it is impermissible for an attorney to obtain actual authority in advance by reviewing potential settlements with his or her client. Quite often it is appropriate, if not essential, for an attorney to enter negotiations with broad actual authority supplied in advance to a range of settlement possibilities. Similarly, I do not conclude that an attorney may never obtain actual authority from an agent for his client. *See Limmer v. Country Belle Cooperative Farmers,* 61 Pa.D & C 2d 109 (C.C.P. Allegheny County 1972).

4. *But see Long v. Lehigh Coal & Navigation Co.,* 292 Pa. 164, 140 A. 871 (1928) (party seeking "to charge a principal for the contracts made by his agent must prove the agent's authority"). I note that placing the burden on a client to establish his or her attorney's lack of authority is consistent with the principles that the burden should be placed on the party seeking to have the court take action (i.e. vacate the settlement) and hav-

ing greater access to relevant evidence (i.e. evidence addressing the scope of the principal—agent relationship). *Cf. In re Fries,* 68 B.R. 676, 683–84 (Bankr.E.D.Pa.1986) (discussion of rationale behind allocations of burdens of proof).

5. As discussed above, the attorney client relationship alone does not give the attorney, as agent, authority to settle a matter on behalf of his client. Under Pennsylvania law, an attorney, or any other agent, may compromise a cause of action upon actual authority to do so. Because I conclude that Dr. Paolino had actual authority to settle on behalf of Mrs. Paolino, I need not resolve the possible tension between *William B. Tanner Co.* (and the cases cited therein) which conclude that an agent may contractually bind his or her principal upon apparent authority with those cases cited above which hold that an attorney cannot contractually bind his or her client upon apparent authority.

closure and bankruptcy proceedings and had actual authority to act on her behalf without her specific authorization." *Paolino,* 72 B.R. at 328. (Conclusion of Law # 1). Here, I conclude further, that Dr. Paolino had actual authority to enter a settlement on June 13, 1986 on behalf of Mrs. Paolino. The evidence indicates that Mrs. Paolino delegated to her husband complete authority to handle the bankruptcy matters and entireties property as he saw fit. *See Paolino,* 72 B.R. at 328–29. Included in that delegation of authority was the express power to negotiate and enter settlements on her behalf. A settlement made by an agent upon express authority binds the principal. *See William B. Tanner; Rothman v. Fillette. See also State Mutual Life Assurance Co. of America v. Deer Creek Park,* 612 F.2d 259 (6th Cir.1979); *In re Windsor Communications Group, Inc.,* 25 B.R. 605 (Bankr.E.D.Pa.1982).

■ Even if I were to conclude that Mrs. Paolino did not give Dr. Paolino express authority to compromise on her behalf, I would nevertheless conclude that by failing to act promptly to repudiate the settlement, Mrs. Paolino ratified the agreement. An act beyond the scope of an agent's authority is ratified if the principal, upon learning of it, does not take immediate appropriate steps to disavow it. *Yarnall v. Yorkshire Worsted Mills,* 370 Pa. 93, 87 A.2d 192 (1952); *Baumgartner v. Whinney,* 156 Pa. Super. 167, 39 A.2d 738 (1944). The Restatement (Second) of Agency § 94 provides:

> An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it.

Here, I have concluded that Mrs. Paolino was informed of the settlement immediately after it was entered. Nevertheless she took no action until approximately one month later when her husband, possibly at her direction, informed the Pincus firm, that he had no authority to make an agreement on her behalf. No attempt was made by Mrs. Paolino to inform the court or the parties that her husband lacked authority to settle on her behalf. It was not until the Pincus firm was subsequently unable to produce the Paolinos' signatures on the written draft of the settlement, that the parties learned that Mrs. Paolino believed she was not bound by the settlement. Mrs. Paolino did not affirmatively attempt to repudiate the settlement by informing the court of her position until at least November, 1986. During that period, the Paolinos reaped significant benefits from the settlement. Not only did Univest and UNB give up their trial date, but also they were unable to act with regard to the property at issue because of the questionable status of the automatic stay. The bankruptcy code permits creditors to obtain speedy determinations on requests for relief from the stay. *See* 11 U.S.C. § 362(e). The policy underlying expedited action on requests for relief would be entirely thwarted here if I allowed Mrs. Paolino to escape the effects of a settlement on automatic stay issues which she ratified by inactivity over a period of several months.

In reviewing the circumstances and sequence of events which occurred in this case, I cannot help but conclude that Mrs. Paolino has embarked upon a strategy to avoid the effects of a settlement which she and Dr. Paolino decided was disadvantageous subsequent to the making of the agreement. I note that a settlement may not be rescinded because subsequent developments indicated that the bargain is more beneficial to one side than to the other.[6] *Beecher v. Able,* 441 F.Supp. 426 (S.D.N.Y.1977) *aff'd.* 575 F.2d 101 (2d Cir. 1978); *Matter of North Broadway Funding Corp.,* 34 B.R. 620 (Bankr.E.D.N.Y. 1983).[7]

---

**6.** I reiterate that I need not reach and decline to pass on whether this particular settlement is, in fact, disadvantageous to the Paolinos.

**7.** Mrs. Paolino may also now be dissatisfied that she delegated to her husband, at least until November, 1986, the decision-making authority as to all aspects of this bankruptcy case. That decision, having been made, cannot now be undone because of her present unhappiness with subsequent events.

For the foregoing reasons an order will be entered granting the relief requested.