**INTERFIRST BANK OF ABILENE, N.A., Plaintiff-Appellee,**

v.

**LULL MANUFACTURING, Defendant-Appellant.**

**No. 85–1037.**

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1985.

Rehearing Denied Jan. 16, 1986.

McMahon, Smart, Surovik, Suttle & Buhrmann, Stephen H. Suttle, Abilene, Tex., Paul A. Leonard, Jr., Highland, Ind., for defendant-appellant.

Wagstaff, Harrell, Alvis, Stubbeman, Seamster & Longacre, Roy B. Longacre, Abilene, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and BROWN and GEE, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This appeal arises out of a lawsuit filed by Interfirst Bank of Abilene (Bank) against Lull Manufacturing (Lull) to recover the value of a forklift which Lull delivered to and later removed from the property of Ted Evans Equipment Company (Evans Co.), a defaulting buyer. We must determine whether the Bank's perfected security interest in the after acquired property of the purchaser attached to the forklift upon delivery and thereby rendered the Bank's interest superior to the unperfected interest of Lull, the unpaid seller of the lift. Following a bench trial, the District Court by memorandum opinion entered judgment

in favor of the Bank in the amount of $55,061.49—the value of the lift.

The District Court ruled that the Bank had perfected its security interest in the lift by virtue of a "UCC–1" filing. Tex.Bus & Com.Code.Ann. § 9.402 (Vernon Supp. 1985). The court then found that Lull had failed to perfect its security interest in the lift and therefore held that the Bank's claim was superior to that of Lull. Lull argues in this appeal that the Bank's security interest never really attached to the forklift and seeks a reversal of the judgment of the District Court. We hold that the Bank's perfected security interest did attach to the forklift. Therefore, since Lull failed to perfect its security interest, we affirm the District Court's judgment that the Bank's claim is superior to the claim of Lull, the unpaid seller of the forklift.

## LULLED INTO A FALSE SENSE OF SECURITY?

Lull manufactures heavy construction and material-handling equipment. In Sep-

tember of 1980, Ted Evans Equipment Company (Evans Co.) became a distributor of Lull's equipment. At the time of entering into the distributorship agreement with Lull, Evans Co. was a sole proprietorship operated by Ted Evans, Sr. The business sold and leased various types of equipment to retail customers in the Abilene area.

In August of 1980, the Bank extended two lines of credit to Evans Co. in exchange for which Evans Co. executed several security agreements. The first security agreement was signed on August 12, 1980, and similar ones were signed at the time of Evans Co.'s loans. The security agreements granted to the Bank a security interest in Evans Co.'s inventory, including inventory acquired after the time the agreements were signed.[1]

The Bank gave notice of its security interest by filing properly executed UCC–1's with the Secretary of State of the State of Texas. *See* Tex.Bus. & Com.Code Ann. § 9.402 (Vernon Supp.1985).

---

**1.** Of the security agreements executed by Evans Co. and the Bank, there are four which cover accounts, chattel paper, and inventory. Ted Evans, Sr., signed these four agreements on August 12, 1980, February 6, 1981, July 7, 1981, and August 11, 1981. All four contain the following after-acquired property clause:

Upon the terms hereof, for value received, Debtor, whose name and mailing address appear above, hereby grants to Bank ... a security interest in:
A. (i) All accounts and chattel paper of Debtor, whenever acquired and whether now or hereafter existing; (ii) all inventory of Debtor whenever acquired and whether now or hereafter existing, including but not limited to all goods, wares and merchandise intended for sale or lease by Debtor or to be furnished by Debtor under contracts of service and all raw materials, goods in process, finished goods and supplies of every nature used or usable in connection with the manufacturing, processing, packing, shipping, advertising, selling, leasing or furnishing of such goods, wares and merchandise; all certificates of title, manufacturer's statements of origin and other documents arising from or related to such inventory; and all accessions, attachments and other additions to, substitutes for, replacements for and improvements to such inventory; and (iii) all proceeds of the property described in (i) and (ii) of this paragraph 1.A.

The first security agreement also contained this additional language:
B. (i) The following described inventory of Debtor:
Including but not limited to all new and used inventory, as per attached Exhibit "A" including the following equipment: Backhoe, forklifts, air compressors, trailers, generators, stone mixers, water pumps, loaders, lay down machines, porta patchers, ditchers, heaters, rollers, but not limited thereto, now owned or hereafter acquired together with all additions, accessions or replacements thereof, whether in the possession of the debtor, warehouseman, bailee or any other person as well as the proceeds of any sales, including trade ins and notes or chattel papers and accounts receivable and any such goods as may be leased or held for leasing.
This type of security agreement is expressly sanctioned by Tex.Bus. & Com.Code Ann. § 9.204 (Vernon Supp.1985) which states:
§ 9.204. After-Acquired Property; Future Advances
(a) Except as provided in Subsection (b), a security agreement may provide that any and all obligations covered by the security agreement are to be secured by after-acquired collateral.

Subsequent to becoming a distributor of Lull's equipment, Evans Co. was incorporated on December 31, 1980, but no notice of the change was provided as required by Article 1302–2.02 of the Texas Revised Civil Statutes.[2] The corporation used the same name ("Evans Equipment Co.") as had the sole proprietorship. The initial security agreement, signed before the incorporation, was signed, "Ted Evans, dba Equipment Co., a proprietorship." The security agreements signed after the incorporation were signed "Ted Evans Equipment Co." or "Ted Evans, Sr., dba Evans Equipment Company." No change was made in the "UCC–1" filing following incorporation. The above factors comprised the essence of Lull's arguments on appeal—that Lull, at all times relevant to this litigation, believed it was dealing with a sole proprietorship and not a corporation.

Ted Evans, Sr. died on May 27, 1982, but the company continued in business presumably under the control of the Evans family. Ted Evans, Jr., whose authority to act for the company is nowhere challenged in this record, ordered a forklift from Lull on June 14, 1982 and the lift was delivered to Evans Co. on July 8, 1982.[3] Lull did not have any security agreement with Evans Co. to cover the forklift and did not bother to investigate whether anyone else might have a security interest in the lift. On July 15, 1982, the Evans Co. notes to the Bank were in default and the Bank repossessed all of Evans Co.'s inventory, including the Lull forklift. Lull contacted the Bank and asked that the forklift be returned. The Bank claimed a security interest in the lift and refused to relinquish possession to Lull. Lull, apparently with the aid of the Evans family, removed the forklift from Evans Co.'s locked premises but without the Bank's consent.

The Bank brought this action for conversion and the District Court awarded judgment to the Bank for the value of the forklift. Lull's major point of contention on appeal is that the Bank did not acquire rights in the lift sufficient for the Bank's security interest to attach.[4] Lull's argument can be summarized as follows:

1. Lull's original distributorship agreement was with a sole proprietorship and Lull at all times believed it was dealing with a sole proprietor, namely Ted Evans, Sr.

2. Ted Evans, Sr. was dead at the time the Lull forklift was ordered, so there cannot have been a valid contract in force between the sole proprietor and Lull.

**2.** Art. 1302–2.02 provides:

Whenever any banking, mercantile or other business firm desires to become incorporated *without a change of firm name*, such firm shall, in addition to the notice of dissolution required at Common Law, give notice of such intention to become incorporated for at least four (4) consecutive weeks in some newspaper published in the county in which such firm has its principal business office, if there be a newspaper in such county; and, if not, then in some newspaper published in some adjoining county; provided, however, that such notice shall only be published one (1) day in each week during the said four (4) weeks. Until such notice has been *so* published for the full period above-named, no change shall take place in the liability of such firm or the members thereof to those dealing with the firm or its members. It shall be a defense that a claimant had actual notice or knowledge of such incorporation.

This provision is geared to preclude *individuals* from escaping liability for corporate debts in the event of noncompliance with its notice requirements. Failure to comply with this statute does *not*, as Lull argues, mean that the corporation ceases to act as a corporation or loses its authority to contract. Lull has completely misconstrued this statute and any reliance upon it in this case is therefore misplaced.

**3.** In the usual course of business dealings between Lull and Evans Co., Evans Co. ordered equipment from Lull and paid for it within ten days of delivery. This allowed Evans Co. to take advantage of a 5% discount off the purchase price.

**4.** A security interest attaches and is enforceable when the agreement meets the requirements set out in § 9.203(a) Tex.Bus. & Com.Code Ann. (Vernon Supp.1985). These requirements are:

(1) The debtor must sign a security agreement which contains a description of the collateral;

(2) Value must be given;

(3) The Debtor must have rights in the collateral. It is the third requirement on which Lull bases this appeal.

Thus, the sole proprietor acquired no rights in the forklift.

3. Neither did the *corporation* acquire rights in the forklift as Lull did not know of the existence of the corporation and believed it was dealing only with the sole proprietor.

4. Therefore, because the Bank was secured only by assets of the corporation, the Bank acquired no security interest in the forklift.

## GONE BUT NOT FORGOTTEN

Dead men don't wear plaid; and dead men don't order forklifts. However, living men sometimes set up corporations whose ability to contract survives even the death of those men. This is what Ted Evans, Sr. did long before his death. He incorporated. Thus, the question is not whether a *corpse* can acquire rights in the forklift but whether the *corporation* did by virtue of its dealings with Lull. Lull's argument, a wonderful example of legal "sleight of hand," disguises the one issue on which Lull's success in this litigation depends— whether there was a contract between the *corporation* and Lull. If a contract was formed between the corporation and Lull, then, as we shall see, the corporation acquired rights in the forklift on delivery and the Bank's security interest properly attached to the lift.

■ Lull's argument refuting the existence of a contract with the corporation is apparently based on the doctrine of "mistake." The alleged mistake is that Lull thought it was dealing with a sole proprietor and not a corporation. The general rule in Texas, and in other jurisdictions, is that a unilateral mistake is insufficient to warrant setting the contract aside unless the mistake is induced by acts of the other party. *West India Industries, Inc. v. Tra-*

*dex, Tradex Petroleum Services,* 664 F.2d 946 (5th Cir.1981); *Southern Nat. Bank of Houston v. Crateo, Inc.,* 458 F.2d 688 (5th Cir.1972); *Turberville v. Upper Valley Farms, Inc.,* 616 S.W.2d 676 (Tex.Civ.App. 1981); 14 Tex.Jur.3d, Contracts, § 99. There is no evidence, and there has been no allegation, that the corporation of Evans Co. induced Lull into believing it was dealing with a proprietorship at the time the forklift was ordered. At oral argument, counsel for Lull expressly declined to assert that Evans Co. had in any way acted fraudulently.

■ An exception to the general rule precluding relief for a unilateral mistake exists when: 1) the mistake is of so great a consequence as to make enforcement of the contract unconscionable; 2) the mistake relates to a material feature of the contract; and 3) the mistake is made regardless of the exercise of ordinary care. *James T. Taylor & Son, Inc. v. Arlington Independent School Dist.,* 335 S.W.2d 371, 160 Tex 617 (1960). Lull's "mistake" does not meet any of these criteria. The mistake was neither material nor of such great consequence that enforcement of the contract would be unconscionable. Lull nowhere contends that it would not have sold the forklift to Evans Co. had it known that Evans Co. was incorporated. Indeed, there is no apparent reason why the fact of incorporation would have been of any significance whatsoever with respect to the sale of the forklift.[5] Moreover, even if this factor really mattered to Lull at the time of the sale, it would have been easy to confirm in the exercise of ordinary care whether or not Evans Co. was operating as a corporation. In Texas, parties to a contract are chargeable with such knowledge that the exercise of ordinary diligence

---

**5.** Perhaps if the actual collapse of Evans Co. had been anticipated, Lull would not have sold the forklift or at least would have perfected a purchase money security interest, but *the fact of incorporation* in and of itself cannot have been material to Lull when it shipped the forklift.

There was also no reason to change the "UCC–1" filing in light of the incorporation of Evans

Co. The UCC requires a change to be made only when the original filing becomes "seriously misleading." Tex.Bus. & Com.Code Ann. § 9.402(g) (Vernon Supp.1985). The District Court correctly held that the change of Evans Co.'s name following incorporation was not "seriously misleading."

would have revealed and a contract will not be set aside because of a mistake if that mistake is a result of carelessness, indifference, or inattention. *Southern Nat. Bank of Houston v. Crateo, Inc.,* 458 F.2d 688 (5th Cir.1972). At the time when the forklift was delivered, Lull had been doing business regularly (though perhaps ignorantly) with the *corporation* for over one and a half years. Furthermore, as previously mentioned, the fact of incorporation is immaterial to the contract. Thus, Lull's mistake clearly resulted from what the law characterizes as indifference or inattention. We conclude that Lull's mistake was not of the type to justify setting aside the contract for the sale of the forklift, and we emphasize that the parties to that contract were Lull and the *corporation* of Evans Equipment Co.

Our next inquiry must be whether Evans Co. acquired rights in the forklift sufficient to allow the Bank's security interest to attach. Since the contract is valid, Evans acquired a property interest in the forklift under the UCC as soon as the forklift was "shipped, marked, or otherwise designated by the seller as goods to which the contract refers." Tex.Bus. & Com.Code Ann. § 2.501(a) (Vernon 1968). Moreover, when Evans Co. took possession of the forklift, it had the right to sell the lift to retail consumers, because title passed on delivery. Tex.Bus. & Com.Code Ann. § 2.401(b) (Vernon 1968). However, with respect to cash sales, § 2.507(b) of the Code recognizes that there is a limited interest conveyed to the buyer prior to payment. Tex.Bus. & Com.Code Ann. § 2.507(b) (Vernon 1968). Under § 2.507(b), absolute ownership does not pass to the buyer until payment is complete, and Evans never paid Lull.

■ We have tackled this problem before and ruled that a defaulting purchaser's interest upon delivery of goods is great enough to permit attachment of a security interest. *Matter of Samuels & Co., Inc.,* 526 F.2d 1238, 1247 (5th Cir.1976), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976). In *Samuels,* cattle were delivered to a buyer who paid with a check which was dishonored.[6] Shortly thereafter, the buyer went bankrupt and the seller tried to reclaim the cattle. However, a creditor of the buyer had perfected a security interest in the buyer's "after-acquired property" which included the cattle. Meanwhile, the unpaid seller had neglected to obtain a purchase money security interest. Thus, the seller in *Samuels* was in the same position that Lull is in now and we consequently find that our holding in *Samuels* controls the outcome of this case. Therefore, we rule that Evans Co. acquired sufficient rights in the forklift on delivery to allow the attachment of the Bank's security interest.

■ Even though Evans Co. subsequently failed to pay Lull for the forklift, the buyer's "power to encumber" arises upon delivery and does not terminate, despite nonpayment, as long as the buyer retains possession. *See Samuels,* 526 F.2d at 1247. As we stated in *Samuels,* the whole point of Article Nine is the continuity of perfected security interests once they have properly attached, despite subsequent loss of control or possession of the collateral by the debtor. *Id., citing* Tex.Bus. & Com. Code Ann. § 9.201. There is no exception to the overall scheme for an unpaid seller. *Samuels,* 526 F.2d at 1247. In fact, Article Nine expressly provides a means for a seller to perfect his security interest and gain priority over previously perfected security interests. *See* Tex.Bus. & Com.Code Ann.

---

**6.** Although *Samuels* involved a cash sale rather than a credit sale, the holding and reasoning of *Samuels* are controlling with respect to the instant case. The import of *Samuels* is that cash sales and credit sales are now treated identically with respect to the security interest of an unpaid seller in goods sold to defaulting purchasers. *See Samuels,* 526 F.2d 1238, 1248 (Gee, J., concurring).

Moreover, the sale of the forklift by Lull is closer to a cash sale than a credit sale as Lull expected payment in full within 10 days of delivery. *See supra* note 3. However, because of our decision in *Samuels,* we find it unnecessary to go into a lengthy analysis of whether the sale of the forklift was a cash sale or a credit sale. Under *Samuels,* it makes no difference to our analysis of the issues presented here.

§ 9.312(c), (d) (Vernon Supp.1985). Lull could have protected its interests against the Bank's prior perfected security interest if it had only complied with § 9.312(c) and (d) and obtained a purchase money security interest. But Lull ignored these Code provisions and thereby took a risk that loss would result. *See Samuels,* 526 F.2d at 1248. Meanwhile, the Bank did everything that the code required in order to perfect its security interest, and its interest is therefore superior to that of Lull. This conclusion is consistent with our ruling in *Samuels* that the interest of an unpaid seller in goods already delivered to a buyer is subordinate to the interest of a holder of a perfected security interest in those same goods. *Id.* at 1241.

In a nutshell, we hold that the Bank's perfected security interest in the after-acquired property of Evans Co. properly attached to the forklift upon delivery, continued despite Evans Co.'s nonpayment, and remained prior to Lull's interest because of Lull's failure to comply with the Code's purchase money security interest provisions.

### TAG ENDS

■■ Lull also argues that the District Court failed to make factfindings sufficient to meet the requirements of F.R.Civ.P. 52(a). Rule 52(a) provides that "[i]f an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." Findings satisfy Rule 52 if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision. *Lujan v. New Mexico Health & Social Services Dept.,* 624 F.2d 968, 970 (10th Cir.1980), *citing Kelley v. Everglades Drainage Dist.,* 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943); *Stanley v. Henderson,* 597 F.2d 651 (8th Cir.1979). It is not necessary for the District Court to go into minute details to state facts which are already admitted in the record. *Jackson v. Marine Exploration Co.,* 614 F.2d 65 (5th Cir.1980). Upon reviewing the memorandum opinion of the District Court,

we have acquired a clear understanding of the factual basis for the decision.

Specifically, Lull challenges the sufficiency of the factual findings which were the basis for the conclusion that the security interest "attached" to the forklift. Lull claims that the District Court failed to identify: 1) the "debtor"; 2) the valued alleged to have been given to the Bank; and 3) the "rights" of the debtor in the forklift.

The facts as stated in the memorandum opinion show that Evans Co. was incorporated in 1980. It follows that the *corporation* had to be the Bank's debtor. The memorandum opinion expressly states that the Bank advanced money as value and the amounts are present in the record. No more is required. The District Court also specifically stated that the right to sell or lease arose on delivery. These findings provide a sufficient factual basis for the court's conclusion that the Bank had a security interest in the forklift. Lull's objections to the sufficiency of the District Court's findings are therefore without merit.

■ We also find no merit in Lull's arguments that the notes and security agreements should not have been admitted into evidence. F.R.Evid. 901(b)(2) provides that a document can be authenticated by a non-expert opinion as to the genuineness of handwriting. This was amply done by two persons, including Ted Evans, Jr. Moreover, F.R.Evid. 902(9) provides that "commercial paper, signatures thereon, and documents related thereto [are self-authenticating] to the extent provided by general commercial law." Texas UCC law provides that each signature on an instrument is admitted unless specifically denied in the pleadings, Tex.Bus. & Com.Code § 3.307(a) (Vernon Supp.1985), which Lull did not do.

AFFIRMED.