**In re Richard G. PAOLINO and Elaine M. Paolino, Debtors.**

**Bankruptcy No. 85–00759G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 29, 1987.

Myron Bloom, Adelman Lavine Gold & Levin, Philadelphia, Pa., for Union Nat. Bank and Trust Company and Univest Mortg. Co.

Jonathan Ganz, Pincus, Verlin, Hahn & Reich, Philadelphia, Pa., for debtor, Richard Paolino.

Jeffrey Meyers, Philadelphia, Pa., for Elaine Paolino.

Michael H. Reed, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Herbert Brener, trustee.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge:

On February 24, 1987, Union National Bank and Trust Company (UNB) and Univest Mortgage Company (Univest) filed a motion to enforce a settlement agreement entered in open court on June 13, 1986. Supporting the motion is the trustee, Herbert Brener. A hearing on the motion was held on March 25, 1987, March 30, 1987 and April 3, 1987.

A brief recitation of the background preceding the filing of the instant motion is helpful. The alleged settlement agreement was made in open court on June 13, 1986. The parties then endeavored to reduce the agreement to writing. By approximately July 15, 1986, counsel for the parties had

either agreed or virtually agreed upon the wording of the written agreement. At that point, the debtors refused to sign the written agreement. A meeting was then held in chambers with counsel after which then Chief Judge Goldhaber issued an order on July 24, 1986, which incorporated the terms of the agreement as drafted by counsel. Through orders issued on November 20 and 26, 1986, the district court vacated the bankruptcy court's order and remanded the case for further proceedings. In an apparent effort to clarify the nature of the proceedings on remand, the movants subsequently filed the instant motion to enforce the June 13, 1986 settlement agreement.

The movants' basic position in this matter is that a binding, enforceable settlement agreement was reached on June 13, 1986 in the presence of one of the two debtors herein, Dr. Richard G. Paolino and that Dr. Paolino, with the advice of counsel, knowingly and voluntarily consented to the terms of the settlement. With respect to the other debtor, Elaine M. Paolino, the movants maintain that her counsel, the law firm of Pincus, Verlin, Hahn and Reich (the Pincus firm), had authority to enter into the settlement agreement; alternatively, they argue that Dr. Paolino had authority to bind his wife to the terms of the settlement. They seek to enforce the agreement as it was read into the record on June 13, 1986.

At the time the movants filed this motion, there was an outstanding dispute whether the Pincus firm, in fact, represented Mrs. Paolino on June 13, 1986. A hearing had been held on the issue of Mrs. Paolino's representation but the matter was still under advisement. *See In re Paolino*, 72 B.R. 323 (Bankr.E.D.Pa.), *aff'd*, 75 B.R. 553 (E.D.Pa.1987). As a result, the movants chose to "bifurcate" their request for enforcement of the June 13, 1986 settlement. Specifically, the movants limited themselves, in the instant motion, to a request for a determination that the settlement agreement was binding as to Dr. Paolino only.

For the reasons set forth below, the motion as to Dr. Paolino will be granted subject to a stay of enforcement designed to insure that Mrs. Paolino's rights are not prejudiced pending further proceedings to determine whether movants are entitled to equivalent relief as to her as well.

## I. FINDINGS OF FACT

1. On March 4, 1985 an involuntary Chapter 11 petition was filed against Dr. Richard G. Paolino and Elaine M. Paolino, his wife.

2. The involuntary petition was contested by both Dr. Paolino and Mrs. Paolino and on May 24, 1985, the court entered an order granting the involuntary petition. *See In re Paolino*, 49 B.R. 834 (Bankr.E.D. Pa.1985).

3. Shortly thereafter, the court considered two motions filed by (a) the petitioning creditors, and (b) UNB, for the appointment of a trustee. After the taking of testimony and the submission of briefs, the court entered an order appointing a trustee. *See In re Paolino*, 53 B.R. 399 (Bankr.E.D.Pa.1985), *aff'd*. 60 B.R. 828 (E.D.Pa.1986).

4. During the course of this case, both Univest and UNB filed various motions and complaints in this court including, but not limited to, the following:

(a) A complaint pursuant to section 523 of the Bankruptcy Code against both Dr. Paolino and Mrs. Paolino seeking to have a $208,000.31 debt of the debtors owing to UNB (plus interest as allowed by law) to be determined to be non-dischargeable. That action was docketed at Adv. No. 86–0060.

(b) A complaint filed on behalf of Univest seeking a determination that certain proceeds of the sale of real estate were not property of the estate, and for an order directing the transfer of those proceeds directly to Univest. That action was docketed at Adv. No. 86–0181.

(c) A motion filed pursuant to the provisions of section 362 of the Bankruptcy Code by Univest for relief from the automatic stay so that Univest could proceed to exercise its rights under law by virtue of the debtors' default under certain agreements pursuant to which they acquired an

equitable ownership interest in a parcel of land and a building situated thereon, commonly known as the William Tennent Middle School located in Bucks County, Pennsylvania.

5. With respect to the complaint docketed at Adv. No. 86–0060, the defendants, Dr. and Mrs. Paolino, failed to file an answer thereto and accordingly, UNB filed an application pursuant to Bankruptcy Rule 7055 for the entry of a judgment by default. The court granted that motion on April 14, 1986.

6. With respect to adversary No. 86–0181, Univest served upon the Paolinos notice of depositions and requests for production of documents. The Paolinos, in response, filed a motion for protective order which was denied by the court. However, notwithstanding the denial of their motion for protective order, the Paolinos failed to appear for the depositions scheduled. Accordingly, Univest filed a motion for sanctions in this proceeding, seeking an order granting it judgment in the action against the Paolinos.

7. With respect to the motion for relief from automatic stay, Univest filed and served upon the defendants notices of deposition and requests for production of documents; again, the Paolinos moved for a protective order which was denied, and notwithstanding that denial, the Paolinos failed to appear at the depositions as scheduled. In this action, Univest filed a motion for sanctions seeking that an order in its favor and against the Paolinos be entered.

8. The court scheduled for June 13, 1986, a hearing on various motions and adversary proceedings. Insofar as they relate to the instant motion, these motions and complaints were:

(a) the motion for relief from automatic stay under section 362 of the Bankruptcy Code with respect to the realty commonly known as the William Tennent Middle School.

(b) the motion for sanctions filed on behalf of Univest in connection with the above-referenced section 362 motion.

(c) the complaint filed on behalf of Univest (Adv. No. 86–0181) seeking to have turned over to it the $101,000.00 being held by the Sheriff of Bucks County, Pennsylvania.

(d) the motion for sanctions filed on behalf of Univest in that adversary proceeding.

9. At the time and date scheduled for hearing these motions, Dr. Paolino appeared with counsel and negotiations took place.

10. At the conclusion of the negotiations, the parties appeared before (then) Chief Bankruptcy Judge Goldhaber and counsel read into the record the terms and conditions of the settlement which was arrived at among Dr. Paolino and his counsel, UNB and Univest and its counsel, and the trustee and his counsel.

11. After the recitation by counsel of the terms and conditions of the settlement, Jonathan H. Ganz, Esquire, who is counsel for Dr. Paolino and a member of the Pincus firm, stated that the terms and conditions set forth on the record on June 13, 1986 represented the terms and conditions of the stipulation reached among the parties.

12. During the negotiation process, Dr. Paolino did not take part in the initial discussions between counsel in every instance. However, Mr. Ganz engaged in "shuttle diplomacy"—he would bring positions back to Dr. Paolino and Dr. Paolino would respond to those positions.

13. At the time of the negotiations, two attorneys from the Pincus firm, Mr. Ganz and Gary R. Kozik, Esquire, were present on behalf of Dr. Paolino as his counsel.

14. All of the terms and conditions which were ultimately set forth on the record on June 13, 1986 were discussed with Dr. Paolino.

15. Each time a point was negotiated, Dr. Paolino was advised by Mr. Ganz what was being negotiated and, during that process, Dr. Paolino had an opportunity to set forth his views regarding those issues. At the conclusion of the negotiations, Dr. Paolino expressed a willingness to take the witness stand and testify that the terms of

the settlement as read into the record were agreed upon.

16. During the course of the negotiations, Dr. Paolino who was represented by counsel, was free to consult with counsel concerning all aspects of the negotiations.

17. Throughout the negotiations, no threat of physical harm of any type was made to Dr. Paolino.

18. At the conclusion of the negotiations, Mr. Ganz advised Dr. Paolino that the terms and conditions which had been negotiated in the hallway between counsel would be put on the record and that Dr. Paolino would have to state on the record whether or not he understood the negotiated settlement.

19. The agreement, as negotiated, was thereupon read into the record.

20. The terms and conditions of the settlement agreed upon were set forth accurately in the record.

21. Dr. Paolino, at the request of his counsel, stated that he was willing to take the witness stand and testify that "this was the agreement."

22. Thereafter, Dr. Paolino was placed under oath and testified that he understood and agreed to all of the terms of the settlement as set forth in open court.

23. At the same hearing, William S. Aichele, Executive Vice President of UNB and Vice President of Univest, also took the stand.

24. Mr. Aichele had authority to enter into agreements on behalf of both UNB and Univest.

25. Mr. Aichele, an authorized representative of UNB and Univest, agreed to the terms and conditions of the settlement which was read into the record, and stated that what was read into the record constituted the agreement.

26. At the same hearing, Dr. Paolino testified that:

(a) he was part and parcel of the negotiations that had taken place;

(b) he was entering into a stipulation that affected his rights; and

(c) he was familiar with all of the terms and conditions of the negotiated settlement, a settlement which had been read into the record by counsel for UNB and Univest, and he was "in accord with that negotiated settlement."

27. Dr. Paolino's assent to the agreement as stated, in open court, was knowing, voluntary and made upon the advice of counsel.

28. On June 13, 1986, Dr. Paolino was aware that the terms of the agreement read into the record were intended by all parties to be final and binding.

29. A draft of an agreement memorializing the settlement was circulated and on July 15, 1986. Mr. Ganz sent to counsel for UNB and Univest a letter requesting changes, all of which were added to the document. The changes were incorporated into the written agreement, and the agreement was sent to Dr. Paolino by Mr. Ganz who testified that the written agreement accurately reflected what the terms of the agreement were and to the extent there was any deviation from what was read into the record on June 13, 1986, those changes could not be characterized as material changes.

30. On July 24, 1986, Mr. Ganz notified other parties that Dr. Paolino would not execute, or authorize the execution of, the written agreement memorializing the terms of the June 13, 1986 settlement.

## II. CONCLUSIONS OF LAW

1. This court has jurisdiction over this proceeding as a core proceeding pursuant to the provisions of 28 U.S.C. section 157(b)(2)(A), (O), and, because the motion affects issues relating to termination of the automatic stay, dischargeability of debts, and objections to discharges, the court also has jurisdiction over this matter by virtue of the provisions of subsections (G), (I), and (J) of that subsection.

2. The June 13, 1986 settlement agreement as read into the record in open court and as testified to by Dr. Paolino and William S. Aichele constitutes a valid, binding and enforceable settlement agreement.

3. Dr. Paolino has advanced no facts which substantiate his position that the June 13, 1986 settlement agreement as read into the record was not a binding and enforceable agreement.

4. Dr. Paolino has presented no evidence which justifies a finding that the binding and enforceable agreement should be set aside on the basis of mutual mistake or duress.

## III. DISCUSSION

It is well settled that a trial court has jurisdiction to enforce a settlement agreement made by litigants in a pending case. The jurisdiction is founded on the strong public policy which favors the settlement of disputes and avoidance of costly and time-consuming litigation. *E.g., Pugh v. Super Fresh Food Markets, Inc.,* 640 F.Supp. 1306 (E.D.Pa.1986); *Rosso v. Foodsales, Inc.,* 500 F.Supp. 274 (E.D.Pa.1980). A settlement agreement is contractual in nature; the essential ingredient of a binding agreement is the parties' mutual assent to the terms and conditions of the settlement. *See Macy v. United States,* 557 F.2d 391 (3d Cir.1977); *Pugh.* "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Morris v. Gaspero,* 522 F.Supp. 121 (E.D.Pa.1981), *quoting Green v. John H. Lewis & Co.,* 436 F.2d 389, 390 (3d Cir.1970); *accord, Good v. Pennsylvania Railroad Co.,* 384 F.2d 989 (3d Cir.1967). The agreement remains binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing. *E.g., Pugh.*

Dr. Paolino raises several arguments in support of his request that the court find the June 13, 1986 settlement agreement to be unenforceable. He claims that: (1) he never gave his consent to be bound by any agreement or authorized his counsel to enter into the agreement which was read into the record in open court on June 13, 1986; (2) he did not understand the terms and conditions of the settlement or their implications; (3) the agreement should not be enforced due to mutual mistake. *See* Debtor's Proposed Conclusions of Law Nos. 2, 3, 5.[1]

Dr. Paolino's suggestion that he did not objectively manifest his consent to the agreement is belied by the record and is easily rejected. Dr. Paolino was present in the courthouse during the negotiations and, through his counsel, actively participated in the discussions. *See* Findings of Fact Nos. 12, 15, 17. He was present in the courtroom when counsel for Univest read into the record what he described as the "salient terms and provisions of the agreement entered into" by the debtor, the trustee and Univest. Exhibit M–3, at 2. Dr. Paolino also took the stand and acknowledged that: (1) he had been involved in the negotiations which preceded the settlement; (2) he was aware of the terms of the agreement he read into the record; (3) he was aware that his rights would be affected by the agreement; and (4) he was in accord with the settlement. *Id.* at 10–11.

Next, Dr. Paolino argues that he did not understand the terms, conditions or implications of the settlement agreement. In making this argument, Dr. Paolino has not identified any substantial provisions of the agreement which he allegedly did not understand. He contends only that he be-

---

**1.** Although his counsel filed an answer to the motion to enforce the settlement agreement, Dr. Paolino also filed, on the day hearing commenced, a document he titled "Affidavit of Merits and Affidavit of Defense by Richard G. Paolino In Support of Correct Augmentation of Incomplete and Correction of Incorrect Answer(s) of Dr. Richard G. Paolino to Motion of Univest Mortgage Co. and Union National Bank to Enforce Settlement Agreement." Ultimately, counsel for movants UNB and Univest elected to move the document into evidence as Exhibit M–4. In this affidavit (M–4), Dr. Paolino sug-

gested that his actions in court on June 13, 1986 were taken under duress. There are situations which justify the setting aside of a settlement on grounds of duress. *See Jurgensen v. Fairfax County, Virginia,* 745 F.2d 868 (4th Cir.1984); *National Labor Relations Board v. S.E. Nichols of Ohio, Inc.,* 704 F.2d 921 (6th Cir.) *cert. denied,* 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983), in this case, the record is insufficient to support such a finding and I note that Dr. Paolino's counsel has not advanced duress as a ground for not enforcing the agreement in his post-hearing submissions.

lieved that the terms read into the record represented only points for continuing negotiations and not the final agreement. This alleged lack of understanding also serves as the factual basis for his contention that the agreement should not be enforced due to mutual mistake.

In making this argument, Dr. Paolino places great emphasis on a letter he allegedly sent to his counsel on June 16, 1986. *See* Exhibit M-4, Attachment I. In that letter to his attorney, Dr. Paolino asserted that he was subject to duress on June 13, 1986 which caused him to enter an oral agreement under circumstances which deprived him of his free will. He further suggests that as a result of the duress, he had agreed to the "verbal contract" on June 13, 1986 with the understanding that he would have the opportunity to review the agreement in writing and additional time to evaluate it. The letter states Dr. Paolino's belief that "the contract should be voidable at [his] election" and purports to exercise a right to void the contract. Dr. Paolino now argues that the letter allegedly written only three days after the events at issue, accurately depicts his state of mind on June 13, 1986.

I am unpersuaded by the evidence put forward by Dr. Paolino and, to the contrary, I find as a factual matter that on June 13, 1986, Dr. Paolino fully understood that he was entering into a binding, final agreement. *Accord, Rosso v. Foodsales, Inc.*[2] I make this finding for several reasons.

First, I find the recitations that took place in open court on June 13, 1986 to be unambiguous. The only reasonable interpretation of the statements made is that the parties had reached a binding agreement. Second, Dr. Paolino is neither uneducated, inexperienced (for a layperson) in legal matters or inexperienced in business affairs. *See* Exhibit M-7. Third, Dr. Paolino was represented and had access to his attorney throughout the events which took place on June 13, 1986. In light of Dr. Paolino's sophistication and the presence of counsel, I cannot accept Dr. Paolino's assertion that he did not understand the import of the proceedings or that he was unaware that he was entering into a binding agreement. Fourth, the June 16, 1986 letter, on which Dr. Paolino so heavily relies, is double-edged evidence. While the letter obliquely refers to a misunderstanding it also demonstrates that three days after the events in question, Dr. Paolino was acutely aware that he had entered a binding contract and that some action needed to be taken to free him from the consequences of his agreement. If Dr. Paolino believes, on June 13th, that he had not bound himself, what occurred in the following three days to make him realize that he misunderstood the meaning of what occurred three days earlier? Dr. Paolino has come forward with no explanation. Thus, the letter is equally consistent with the movants' theory that Dr. Paolino fully understood that he had entered a contract and simply changed his mind after leaving the courtroom.

I also have serious doubts whether the letter was, in fact, sent to counsel on June 16, 1986, despite Dr. Paolino's claim that it was both mailed and hand delivered. Dr. Paolino's counsel, Mr. Ganz, could not recall receiving the June 16th letter. Nor could he recall any discussions with Dr. Paolino relating to the concerns raised in the letter. Mr. Ganz did recall that he had discussions with his client relating to the agreement as reduced to writing by counsel. Those discussions could not have taken place until the agreement had been reduced to a written draft some time in July 1986. I do not believe that Mr. Ganz would have continued negotiating the precise language to be used in reducing the oral agreement to writing and in resolving nonmaterial details had he been aware, in mid-

**2.** My findings are not inconsistent with the holding in *Autera v. Robinson,* 419 F.2d 1197 (D.C.Cir.1969), a case upon which Dr. Paolino places great reliance. The precise holding in *Autera* is that where disputed issues of fact arise in a motion to enforce a settlement agreement, the trial court may not resolve those issues on affidavits alone, but must conduct an evidentiary hearing in which the parties are afforded the opportunity to cross-examine adverse witnesses. That procedural requirement was fully adhered to in this case.

June 1986, that his client wished to repudiate the agreement. *See* Exhibit M–5. To the extent Mr. Ganz's testimony may be in conflict with Dr. Paolino's averments, I credit Mr. Ganz's testimony. For these reasons, I am unwilling to draw any inferences regarding Dr. Paolino's state of mind on June 13, 1986 from his letter of June 16, 1986.

Finally, I must also reject Dr. Paolino's argument based on mutual mistake. A "mutual mistake" is a mistake common to both contracting parties wherein each has the same misconception regarding a past or existing material fact. *Great Western Sugar Co. v. Mrs. Alison's Cookie Co.*, 749 F.2d 516 (8th Cir.1984). The doctrine of mutual mistake of fact provides that a contract is reformable or voidable if the parties mutually erred about a basic fact material to their agreement. *H. Prang Trucking Co. v. Local Union No. 469*, 613 F.2d 1235 (3d Cir.1980); *accord, Orlandi v. Goodell*, 760 F.2d 78 (4th Cir.1985). In cases of unilateral mistake, however, a party cannot, as a general rule, escape his contractual responsibilities. *Great Western Sugar Co. v. Mrs. Alison's Cookie Co.; E.F. Hutton & Co. v. Schank*, 456 F.Supp. 507 (D.Utah 1976). There are exceptions to the general rule regarding unilateral mistake. For example, a contract may be voided if (1) enforcement of the contract would be unconscionable; (2) the mistake is material; (3) the mistake occurred despite the exercise of ordinary care; and (4) it is possible to restore the other party to the status quo ante. *In re Sand N' Surf, Inc.*, 13 B.R. 384 (Bankr.E.D.Pa.1981); *accord, Interfirst Bank of Abilene, N.A. v. Lull Manufacturing*, 778 F.2d 228 (5th Cir.1985); *Matter of Unit, Inc.*, 45 B.R. 425, 433 (Bankr.S.D.Ohio 1984).[3]

In this case, I have found that there was no mistake. Specifically, Dr. Paolino was aware that the statements on the record constituted a binding agreement, not simply a phase of ongoing negotiations. The evidence convinces me that, on reflection, after leaving the courthouse on June 13, 1986, Dr. Paolino concluded that he was dissatisfied with the settlement he and his counsel had negotiated and that his subsequent conduct stems from his desire to repudiate the agreement. Thus, the doctrine of mutual mistake is inapplicable. Even if there was a mistake, at most it was unilateral on the part of Dr. Paolino, and, in the circumstances before me, I would not exercise my discretion to relieve Dr. Paolino of the consequences of his actions. On the record before me, I am not convinced that enforcement of the agreement would be unconscionable or that the mistake occurred despite the exercise of ordinary care.

## IV. RELIEF

Based on the discussion above, I am prepared to grant the motion to enforce the settlement agreement as to Dr. Paolino as it was read into the record on June 13, 1986. The movants' decision to prosecute separate motions against Dr. Paolino and Mrs. Paolino mandates, however, that Mrs. Paolino's rights be protected pending a determination whether she, too, is subject to the terms of the June 13, 1986 settlement agreement. Absent such a determination, her counsel has questioned whether the agreement can be enforced at all insofar as it purports to affect property held by the debtors as tenants by the entireties.

To some extent, this may be an academic exercise in light of my decision in *In re Paolino*, 72 B.R. 323 (Bankr.E.D.Pa.), *aff'd*, 75 B.R. 553 (E.D.Pa.1987). Nevertheless, Mrs. Paolino is entitled to present evidence and legal argument on any notice which may be filed by the movants.

An appropriate order will be entered.

---

**3.** Some courts have stated that a unilateral mistake may be sufficient to warrant setting aside a contract if the mistake was induced by the acts of the other party, *see Interfirst Bank of Abilene N.A. v. Lull Manufacturing*, 778 F.2d 228 (5th. Cir.1978), or the other party knows or has reason to know of the mistake, *Harrison v. Fred S. James, P.A., Inc.*, 558 F.Supp. 438 (E.D.Pa.1983) (citing Pennsylvania law). There is nothing in the record in this case to suggest that the movants either induced or were aware of Dr. Paolino's alleged mistaken belief of fact.