Sidle, Appellant, *v.* Kaufman et al.

550

Argued September 29, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Adolph L. Zeman,* with him *Alfred E. Jones, Jr.,* for appellant.

*Herman M. Buck,* with him *Jos. W. Ray, Jr.,* of *Shelby, Ray & Coldren,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, November 23, 1942:

This is an appeal from a decree dismissing a bill in equity to compel specific performance of a contract for the sale of real estate consisting of a house and lot in the Borough of Brownsville, Pennsylvania.

Nathan Kaufman purchased the property in dispute for residence purposes, in 1923, taking title in the name of his wife, Dora Kaufman. Early in 1938 the Kaufmans offered to sell the property to Samuel S. Sidle for $10,000, and Sidle expressed a desire to buy at this figure if given

three years to make payment. A lease agreement was entered into, dated March 10, 1938, with Dora Kaufman as lessor, leasing the property to Sidle for a term of three years, beginning April 1, 1938, at a monthly rental of $75, and on the same date the Kaufmans joined in the execution of a written option, giving Sidle the exclusive right to purchase the property for the sum of $10,000, at any time within three years from April 1, 1938, provided he notify the Kaufmans of his election to accept the option on or before January 1, 1941. By the terms of the option agreement it was also provided that in the event of exercise of the option Sidle should be entitled to apply on account of the $10,000 purchase price the amount of rentals paid by him under the lease agreement less interest on $10,000 at the rate of 6% per annum and all taxes and insurance on the property paid by the Kaufmans during the term of the lease. Sidle took possession of the premises on April 1, 1938, under the agreements and made substantial alterations and improvements, costing $3,000 to $4,000, without objection on the part of the Kaufmans.

On February 9, 1941, the dwelling on the property was rendered uninhabitable by a fire and the Sidles took up temporary quarters in the Monongahela Hotel, Brownsville. Following the fire Kaufman and Sidle had two meetings, in Miami Beach, Florida, to discuss adjustment of the insurance due by reason of the fire loss and on neither occasion did Kaufman assert a failure on the part of Sidle to accept the option on or before January 1, 1941. At that time neither was aware of the exact amount of insurance on the property, and a question had arisen as to its collectibility because the policies did not disclose the existence of Sidle's option. On March 12, 1941, Sidle, still in Florida, wrote to the Kaufmans, requesting an extension of the "matured date of the option" until such time as the fire loss could be adjusted, and in reply received a letter from the Kaufmans' attorney, dated March 14, 1941, stating as follows: "The option provides

that if you wish to purchase, you must notify the owners of the property on or before January 1, 1941. Since you served no notice of acceptance on or before the above date, the option has expired and it follows that you have no interest in the property or in any settlement Mr. Kaufman may make with the insurance company for the destruction of the property by the recent fire." As it developed, the amount of fire insurance carried on the dwelling exceeded the option price and the Kaufmans received the total sum of $10,310 in settlement for the loss.

On March 27, 1941, five days before the date fixed for closing the transaction, Sidle offered to place in escrow the purchase price of $10,000, to be paid over to the Kaufmans provided they deliver a proper deed and account for the rents received, less interest on $10,000 at six per cent from April 1, 1938, and taxes and insurance, and pay over to him the balance together with the $10,310 proceeds of the fire insurance. The Kaufmans rejected this offer, refused to recognize that Sidle had any further interest in the property for the reasons stated in their letter of March 14, 1941, and on April 15, 1941, they conveyed the property, in its damaged condition, to Reuben Shure, a cousin of Nathan Kaufman, for a consideration of $3,000. Shure, to finance the transaction, then borrowed the sum of $7,000 from Louis Altman and Bertha Altman, of Brownsville, giving them a mortgage on the property in that amount. Of this sum $5,000 was advanced by the Altmans at the execution of the mortgage and the balance of $2,000 was retained by them to be used by Shure in making necessary repairs.

In his bill, filed May 5, 1941, naming the Kaufmans and their grantee, Shure, as defendants, Sidle averred compliance with the terms of the option agreement and asked for specific performance. At the hearing on the bill and answers counsel for the parties agreed that the only issue in the case, as stated in the pleadings, was whether notice of election to accept the option was given

by Sidle on or before January 1, 1941, as required by its terms. Sidle insisted that he informed Kaufman of his acceptance at a meeting in the latter's office at Uniontown, Pennsylvania, on December 12,1940,and contended this also constituted notice to Dora Kaufman, on the theory that Kaufman was her agent for this purpose. The Kaufmans denied that notice of acceptance had been given them, or either of them, at any time prior to January 1, 1941, denied that Kaufman was agent of Mrs. Kaufman to accept the required notice, and urged that the statements relied upon as constituting notice were insufficient for that purpose as a matter of law. The chancellor, however, specifically refused to determine the disputed question of fact as to whether notice had been communicated to Kaufman or to decide whether if given, as testified by Sidle, it was legally sufficient and binding upon Dora Kaufman, taking the view that the bill must be dismissed for failure of Sidle to make an unqualified tender of the purchase price on or before April 1, 1941, the closing day, under the decision of this Court in *Spratt v. Greenfield*, 279 Pa. 437. Exceptions filed by Sidle to the adjudication of the chancellor were dismissed by the court en banc, after argument, and a final decree was entered dismissing the bill. From the decree so entered Sidle has taken this appeal, contending that under the admitted facts no question of the adequacy of his tender can arise and that he is entitled to a decision based upon a determination of the disputed questions of notice and agency. On the other side, it is urged that the view of the court below on the question of tender should be sustained, but that in any event the decree was properly entered for the reason that the evidence of Sidle as to the giving of notice is not sufficient as a matter of law to bind the Kaufmans, or either of them; and it is further contended that specific performance was rightly denied on the ground that Shure and the Altmans were bona fide purchasers without notice.

Apart from the fact that in each case the property was damaged by fire prior to the closing day, any simi-

larity between *Spratt v. Greenfield,* supra, relied upon by the court below, and the present case is purely superficial. That case involved the ordinary contract for the sale of real estate, at a fixed sum, to be paid by the vendee at settlement day; the vendee had refused to make settlement on the date for closure, demanding a credit in advance to the extent insurance would be paid to the vendor or a postponement of settlement until the insurance had been collected and an adjustment made; and the bill was denied on the ground that under these circumstances the utmost the vendee might be entitled to demand was the right to have the insurance money transferred to him when collected. Here the contract expressly provided for a credit on account of the purchase price, based upon rentals paid over the period of three years less interest and carrying charges, including insurance, and so far as appears the insurance due by reason of the fire loss had already been adjusted and may have been paid. Moreover, in the present case the vendors had explicitly repudiated the contract by their letter of March 14, 1941; again at the time of Sidle's attempted tender, on March 27, 1941, five days prior to expiration of the time for closing the transaction, they set up the claim that no contract existed; and at all times since, down to the present appeal, they have taken the position that Sidle had no right to tender the purchase price or make any demand upon them for a deed to the property. Under such circumstances it has been held over and over again that the vendee is relieved of all necessity of making a tender as a condition of specific performance, on the ground that the law does not require the doing of a vain and utterly useless act, and hence whether an adequate tender was made by Sidle, or no tender at all, is of no consequence in the disposition of this case. Having expressly declared the contract null and void prior to settlement day, and in the meantime having done no act recognizing its validity, the Kaufmans are not now in position to assert that a full

and complete tender was not made: *Penna. Mining Co. v. Smith,* 207 Pa. 210, 211-12; *Shrut v. Huselton,* 272 Pa. 113, 116; *Martin v. Cybulski,* 282 Pa. 297, 299; *Driebe v. Fort Penn Realty Co.,* 331 Pa. 314, 320.

The option agreement gives Sidle the exclusive right of purchase at any time prior to April 1, 1941, provided he "shall on or before January 1, 1941," give notice that he "will take, accept and purchase said premises" within the limit of time stated. Sidle testified, on direct examination, that on December 12, 1940, at the meeting in Kaufman's office, he stated to Kaufman, "I am notifying you at this time I am going to buy my home around April 1st when my option expires," and on cross-examination he testified, "I told him, on or before April 1st, I was going to take it over. I had made arrangements for that." It is conceded written notification of intention to exercise the option was not necessary to give rise to an enforceable contract of sale, in the absence of a provision to that effect, but is urged that this testimony and similar evidence given by Sidle and his son, the only other person present at the conference, is not sufficiently positive in its terms to constitute acceptance of an offer, and is, therefore, inadequate for the purpose of showing an election as a matter of law: *Warner Bros., Inc., v. Proffitt,* 329 Pa. 316, 319; *Restatement of Contracts,* section 58. The court below was not impressed with this contention, as indicated by its refusal of a decree of dismissal at the close of Sidle's case, and neither are we. Kaufman, of course, now denies that Sidle expressed any such intention at the meeting of December 12, 1940, or at any other time prior to January 1, 1941, but he does not deny that there was a meeting on that date, and he admits he did not say anything to Sidle about not exercising the option until the letter of March 14, 1941, although on at least two occasions following the fire Sidle discussed with him the matter of adjusting the fire loss, expressing concern that some objection might be raised by reason of failure of the policies to disclose the

existence of his outstanding option. This conduct on the part of Kaufman would seem to indicate that he too believed the option had been properly exercised until March 14, 1941, or until it became apparent that a favorable insurance settlement would be made, and is hardly explicable on any other rational theory.

Nor can we accede to the contention that "unless specific authorization existed for the acceptance of notice of the exercise of the option, Dora Kaufman, as owner of the property, was not bound by anything that the appellant may have said to her husband." The existence of an agency for this purpose was not required to be shown by evidence of "specific authorization," but may be implied from the attending circumstances. As said by Judge PARKER (now a member of this Court) in *Mitchell v. First Nat. Bank of Confluence*, 136 Pa. Superior Ct. 467, 472: "That the relationship of principal and agent does not arise from the marital relation is well settled . . . 'The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts, or conduct clearly implying an agency' . . .; but such relation is competent evidence when considered with other circumstances as tending to establish the facts of agency and where there has been other competent evidence tending to the same end." Or, as expressed in *Restatement of Agency*, section 22, comment (b): "Neither husband nor wife by virtue of the relationship has power to act as agent for the other. The relationship is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs." See also *Early v. Rolfe*, 95 Pa. 58, 60; *Rodgers v. Saxton*, 305 Pa. 479, 484. By her own admissions Dora Kaufman took no active part in the negotiations with Sidle;

she was not aware of the amount of insurance on the property or its assessed valuation; all of the rents were collected by Kaufman and deposited to their joint account; and, finally, she admitted that she "expected Mr. Sidle to deal with [Kaufman] in connection with all matters connected with this transaction." This and other evidence in the record would appear to compel the conclusion that Kaufman was vested with a general authority to deal with the property, including authority to accept notice of acceptance of the option, and especially is this so when there is added the fact of marital status. *Eisler v. Marshall*, 230 Pa. 208, cited to us by appellees, did not involve the marital status. Moreover, there was in that case a finding by the chancellor—"fully justified by the evidence"—that the party served with notice of election was agent for the other parties to the option agreement "only in certain matters and with limited powers, and had no authority from them to sell the coal or to accept for them the notice provided for in the agreement of the appellant's election to purchase." That case thus involved merely application of the rule that the findings of the chancellor, in proceedings of this character, have all the force and effect of the verdict of a jury if there is evidence to support them, and can have no application here since, as already stated, no finding on the question of agency has been made.

It is well settled that purchasers and mortgagees of real estate are affected not only by matters of which they had actual knowledge and by what appeared in the office of the recorder of deeds and in the various courts of record whose territorial jurisdiction embraced the land in dispute, but as well "by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the title": *Salvation Army Inc. Tr. v. Lawson*, 295 Pa. 459, 463. See also *Kinch v. Fluke*, 311 Pa. 405, 408; *Driebe v. Fort Penn Realty Co.*, supra, 318; *Koubek v. Tenos*, 343 Pa. 409, 412. Here it is ad-

mitted Sidle entered into open, exclusive and notorious possession of the premises in 1938, residing there with his family down to the date of the fire. After the fire the Sidles were compelled to take up temporary quarters elsewhere, owing to the damaged condition of the dwelling, but furniture and other personal property of Sidle remained (and so far as appears still remains) on the premises, and he thus did in fact continue to assert and retain possession under the lease and option agreement. At the hearing Shure admitted he had not read the answer sworn to by him and filed in his behalf, denying notice; admitted he had heard about the option from "a lot of people" and that Sidle had told him he "had some kind of understanding with Mr. Kaufman"; and he testified he made no inquiry of Sidle, because he "relied upon and trusted Mr. Kaufman implicitly." Shure thus deliberately omitted to make inquiry of Sidle, the party in possession, or others known to him to have knowledge of facts affecting the title, and failing to do so, is chargeable, as a matter of law, with constructive notice of all that such inquiry would have disclosed. As appellant states: "The testimony regarding Reuben Shure indicates clearly that he willingly bought his way into litigation regardless of the consequences and relying solely upon the ability of Nathan Kaufman to make him safe." Whether the Altmans, mortgagees of Shure, had notice, actual or constructive, is not presently a material matter. Assuming for present purposes that they did not, this would afford no basis for refusing relief as against the Kaufmans or Shure, since Sidle has the right, if he so elects, to waive complete performance and accept such title as they are now in a position to give. "The general rule is well settled, a vendee may elect to take a partial performance of a contract by the vendor; especially is this true where the vendee is willing to take a defective title without seeking abatement in the purchase price": *Medoff v. Vandersaal,* 271 Pa. 169, 171. See also *Hughes v. Antill,* 23 Pa. Superior Ct.

290, 296; *Whiteside v. Winans*, 29 Pa. Superior Ct. 244, 248.

Our conclusion, in accordance with the above views, is that the court below ought to have rendered a decision based upon the disputed questions of notice and agency, as appellant contends, and that the decree dismissing the bill on other grounds was improvidently made. We will, therefore, reverse the decree and remit the record for findings and conclusions on these issues and the entry of an appropriate decree based thereon.

The decree is reversed and the record is remitted to the court below for further proceedings not inconsistent with this opinion; costs to abide the final result.